LEGGETT *et al. v.* VINSON.

(Division A.   Nov. 18, 1929.)

[124 So. 472.   No. 28046.]

**B. F. Carter** and **Welch & Cooper,** of Laurel, for appellants.

Deavours & Hilbun and **C. S. Street**, of Laurel, for appellee.

Argued orally by **Ellis B. Cooper**, for appellant, and by **Henry Hilbun**, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellee, M. M. Vinson, filed this suit in the circuit court of Jones county, Miss., against Dr. T. Ford Leggett and his wife, Mrs. Norma Leggett, as owners of a certain house and lot located in the city of Laurel, Miss., and against the Lamar Life Insurance Company, ·the holder of a mortgage lien on said house and lot, for the sum of two thousand two hundred fifty-nine dollars and thirty-nine cents, the alleged balance due on a building contract, and sought to impress on the said house and lot a mechanic's and materialman's lien. There was a verdict in favor of the appellee for two thousand one hundred dollars, and a judgment entered awarding a recovery of said sum against Dr. Leggett, and also impressing a first lien upon the real estate and ordering the issuance of a special execution for the sale of the property; and from this judgment, an appeal was prosecuted to this court.

The declaration filed by the appellee alleged, in substance, that on about the 2d day of August, 1927, he entered into an oral contract with the appellant Dr. Leggett, under which the appellee agreed and undertook to furnish materials for, and to supervise and direct, the construction of the building or buildings being erected on certain real estate described therein; that by the terms of said contract, the appellee was to supervise and direct the construction of such buildings already then begun, except the plumbing, heating, lighting, and roofing; that the appellant T. Ford Leggett was to pay the appellee the sum of fifty cents per hour for the time employed in and about the performance of the contract, and was also to pay the appellee, upon the completion of the buildings, for all materials of every kind and description used by him in the erection and construction of the buildings before and after said oral contract was

made; that the appellee faithfully performed all the terms of the said contract and completed the buildings in strict accordance therewith; that in the construction of said buildings, in accordance with the terms of the said contract, he purchased the material used in and about the construction thereof, to the amount of two thousand three hundred sixty-two dollars and seventy-eight cents, as shown by an itemized statement attached to the declaration, and performed labor for the appellant amounting to three hundred twenty-four dollars and fifty cents; and that after allowing all proper credits, there was due the appellee under the contract the total sum of two thousand two hundred fifty-nine dollars and thirty-nine cents, for which he prayed judgment, with a lien upon the said real estate to secure the payment thereof.

To this declaration the appellants filed a plea of the general issue and a special plea of settlement, and also a special plea averring that the house was not built under an oral contract but was built under a written contract executed by and between the appellants T. Ford Leggett and the appellee, Vinson; that the building was built according to said written contract, except a few minor changes which were agreed upon and which did not vary the price or other terms of the contract; and that the appellant had paid the appellee in full, in accordance with the terms of the written contract, soon after the completion of said building. A copy of the said written contract was attached as an exhibit to this special plea. The appellee traversed these special pleas, and upon the issues thus made, evidence was heard and the cause submitted to the jury under the instructions of this court.

The appellee testified that he entered into the written contract which was filed as an exhibit to the special plea of the appellant, under the terms of which he agreed to furnish all the labor and material of every kind and char-

acter for the construction of such building, and to construct and complete the same in a workmanlike and substantial manner, except the plumbing, electric wiring, and roofing, at and for the sum of three thousand nine hundred and fifty dollars; that he began work under this written contract and continued for about seven weeks, when he discovered that he could not complete the work at the price fixed in this contract without suffering great loss, and so informed Dr. Leggett; and his version of the ensuing dealings and agreement with the appellant Dr. Leggett is stated in the following language:

"A. The morning before that I told Dr. Leggett that the job could not be carried through under the written contract; that I didn't have the money, and what to do about it? and he said, 'bring your bills together and we will talk it over and see about it' and next morning I brought it and he said, 'how much more for this job' I said, approximately one thousand dollars; and he complimented me on the work and said—'go ahead and complete the job like we started and I will pay you time and pay the bills.' "

On cross-examination of the appellee, the following testimony was given:

"Q. You say about seven or eight weeks after you had gone on this job you went to Dr. Leggett and told him you were going to lose money on the job? A. That's right. . . .

"Q. And you took this contract for three thousand nine hundred fifty dollars and you are suing Dr. Leggett for the loss you had on the building? A. For the loss he had.

"Q. And you say while under the obligations of that contract to go on and complete the house under the contract Dr. Leggett agreed with you to pay the bills? A. Yes. . . .

"Q. You are suing him for two thousand two hundred dollars and eighty-nine cents and interest that is, what you would have lost on the place had it not been for this oral agreement that Dr. Leggett you say entered into with you on August 2nd—that right? A. Yes. . . .

"Q. He told you that—notwithstanding he had this contract with you he would brush that aside and would pay everything, and also for your time? A. Yes.

"Q. Altho you were under obligation at that time to complete the house for three thousand nine hundred fifty dollars? A. Yes."

Appellants assign as error the action of the court below in overruling a motion to exclude the evidence and direct a verdict for the defendants which was made at the conclusion of appellee's evidence, and also in refusing the peremptory instruction which was requested by them at the conclusion of all the evidence; the contention of appellants in this regard being that under the alleged oral contract the appellee assumed no burdens or obligations other than those already imposed by the written contract, and therefore the oral agreement of appellants, if made, was without consideration.

While there is some authority to the contrary, notably from the courts of Massachusetts, Indiana, and Illinois, the great weight of authority seems to establish as the general rule the proposition that a promise to do that which a party is already legally bound to do is not a sufficient consideration to support a promise by the other party to the contract to give the former an additional compensation or benefit, and such a promise cannot be legally enforced although the other party has completed his contract in reliance upon it; and with this general rule, prior decisions of this court are in accord. In the case of Keith & Hastings v. Miles, 39 Miss. 442, 77 Am. Dec. 685, the court had under consideration a promise made by one party to secure the performance by another

of a duty imposed upon the latter by virtue of the legal relation existing between them, and the court there said: "No action will lie to enforce a promise for doing that which it was the party's legal duty to do, *without* such promise or reward, 'for this would be extortion and illegal.' . . . The promise relied on to avoid the items of board and tuition claimed in the account of plaintiff's intestate being without consideration is void."

In the case of Bell v. Oates, 97 Miss. 790, 53 So. 491, 492, the court had under consideration an effort to enforce a promise to pay additional compensation for service performed under a contract, and the court said: "Appellee, under the contract, was bound to render the very service he is making claim for; and, had it been shown that decedent expressly agreed to pay therefor an amount additional to that provided in the contract, such agreement would not be binding on her estate, because without consideration."

In the case of McGovern v. City of New York, 234 N. Y. 377, 138 N. E. 26, 30, 25 A. L. R. 1442, McGovern and others entered into a contract with the city of New York to build a subway, and afterwards, on account of an unforeseen advance in the price of labor and material, a later contract was entered into for increased compensation for the same work, and the court held that the latter contract violated a constitutional provision of that state, and further that: "The plaintiffs, therefore, did nothing more than it was their duty to do without additional reward. . . . We hold, then, that the defendant's promise is unenforceable for lack of a consideration to support it."

In the case of Creamery Package Mfg. Co. v. Russell et al., 84 Vt. 80, 78 A. 718, 719, 32 L. R. A. (N. S.) 135, certain work called for by the specifications in a building contract was done on a promise of additional pay therefor, and in passing upon the right to recover for such

additional sum, the court said: ''And, though the trustee had promised to pay extra for the subfoundation, the promise would be void for want of consideration; the defendant being already legally bound to build it without such compensation.''

The supreme court of Minnesota, in the case of King v. Duluth, M. & N. Ry. Co., 61 Minn. 482, 63 N. W. 1105, 1106, held that: ''Where the refusal to perform and the promise to pay extra compensation for performance of the contract are one transaction, and there are no exceptional circumstances making it equitable that an increased compensation should be demanded and paid, no amount of astute reasoning can change the plain fact that the party who refuses to perform, and thereby coerces a promise from the other party to the contract to pay him an increased compensation for doing that which he is legally bound to do, takes an unjustifiable advantage of the necessities of the other party. To hold, under such circumstances, that the party making the promise for extra compensation is presumed to have voluntarily elected to relinquish and abandon all of his rights under the original contract, and to substitute therefor the new or modified agreement, is to wholly disregard the natural inference to be drawn from the transaction, and invite parties to repudiate their contract obligations whenever they can gain thereby. . . . Surely it would be a travesty on justice to hold that the party so making the promise for extra pay was estopped from asserting that the promise was without consideration. A party cannot lay the foundation of an estoppel by his own wrong. If it be conceded that by the new promise the party obtains that which he could not compel, viz., a specific performance of the contract by the other party, still the fact remains that the one party has obtained thereby only that which he was legally entitled to receive, and the other party has done only that which he

was legally bound to do. How, then, can it be said that the legal rights or obligations of the party are changed by the new promise? . . . Where the promise to the one is simply a repetition of a subsisting legal promise there can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract. . . . And the promise cannot be legally enforced, although the other party has completed his contract in reliance upon it."

In the case of Ayres v. Railroad Co., 52 Iowa, 478, 3 N. W. 522, a contractor threatened to stop construction work because it was unprofitable, and the railroad company agreed to pay the debts incurred by the contractor if he would continue, and after the performance of the contract in reliance on this promise, it was sought to enforce the promise, but the court held: "An agreement to do what one is already under a legal obligation to do does not constitute a consideration for a contract."

The case of Willingham Sash & Door Co. v. Drew, 117 Ga. 850, 45 S. E. 237, was one where a party entered into a contract to build a house for a stated sum. This sum was paid, but it was seen that the contractor would lose money, and the owner thereupon agreed to pay additional compensation; but the supreme court of Georgia held that the contract to pay this additional sum was void for want of consideration, for the reason that the contractor undertook to do no more than he was already bound to do. As supporting the general rule above announced, we also refer to the following cases: Lingenfelder v. Wainwright Brewing Co., 103 Mo. 578, 15 S. W. 844; Empire State Surety Co. v. Hanson (C. C. A.), 184 F. 58; Jones v. Risley, 91 Tex. 1, 32 S. W. 1027; Festerman v. Parker, 32 N. C. 474; Shriner v. Craft, 166 Ala. 146, 51 So. 884, 28 L. R. A. (N. S.) 450, 139 Am. St. Rep. 19,

This principle is announced in Williston on Contracts, vol. 1, section 130, in the following language: ''Where A and B have entered into a bilateral· agreement, it not infrequently happens that one of the parties, becoming dissatisfied with the contract, refuses to perform or to continue performance unless a larger compensation than that provided in the original agreement is promised him. Especially common is the situation where a builder or contractor undertakes work in return for a promised price and afterwards finding the contract unprofitable, refuses to fulfill his agreement but is induced to fulfill it by the promise of added compensation. On principle the second· agreement is invalid for the performance by the recalcitrant contractor is no legal detriment to him whether actually given or promised, since, at the time the second agreement was entered into, he was already bound to do the work; nor is the performance under the second agreement a legal benefit to the promisor since he was already entitled to have the work done. In such situations and others identical in principle, the great weight of authority supports this conclusion.''

Some of the cases supporting the general rule, as herein approved, recognize as an exception to this rule cases where a party refused to complete his contract on account of exceptional circumstances or unforeseen difficulties and burdens which would justify such party in rescinding the contract; but it will be unnecessary for us to here consider any question of exceptions, if any, to the general rule, for the reason that there is in the record now before us no evidence of any exceptional circumstances or unforeseen and substantial difficulties that would justify the appellee in rescinding the contract. Mere inadequacy of the contract price which is the result of an error of judgment on the part of the contractor is insufficient, and nothing more is made to appear in this record.

From the appellee's own testimony, it appears merely that after having spent several weeks in the prosecution of the work which he had contracted to do, he discovered that the completion of the contract would require more money than he had calculated upon and that he had made a losing contract. He admits that at the time the promise of additional compensation was made by the appellant, he was under obligation to complete the building for the contract price of three thousand nine hundred fifty dollars, and as to the payment in full of this contract price there is no real conflict in the testimony. By this oral contract the appellee assumed no obligations or burdens other than those already imposed by the written contract. At the time the alleged oral promise was made, he was obligated to perform under the original contract, and he had merely notified the appellant Dr. Leggett that he did not have the money to carry the job through under the written contract, and in the case of R. T. Clark & Co. v. Miller (Miss.), 122 So. 475, 481, the court held that the mere assertion that "he [the contractor] will be *unable or will refuse* to perform his contract is not sufficient to constitute a breach. There must be a distinct, unequivocal, and absolute refusal to perform, treated and acted upon as such by the other party to the contract. A mere assertion of inability to go on with the contract is not a repudiation of the contract."

It is undoubtedly true that the parties to a contract may modify it, or waive their right under it, and ingraft new terms upon it, and in such case the promise of one party will be sufficient consideration for the promise of the other. But where the promise of one is merely a repetition of a subsisting legal promise, and the duties, obligations, and burdens imposed upon such party by the contract are in no way varied, altered, or changed, there is no consideration for the promise of the other. Such is the case made by the appellee's proof, and therefore

the alleged promise of appellee was without consideration.

The appellee contends, however, that the appellant cannot avail of the defense of lack of consideration for the reason that the contract was fully executed; and in support of this contention he relies upon the case of A. Greener & Sons v. Cain & Sons, 137 Miss. 33, 101 So. 859, in which it was held that an executed contract of accord and satisfaction between a debtor and creditor was binding although there was no consideration for the new contract. In the Greener & Sons Case, supra, the debtor had tendered in full settlement of a past-due indebtedness a less amount than owing, and the creditor by the acceptance of the tender had agreed to so accept it. The agreement had been fully executed by the discharge of the mutual obligations of the respective parties, and the court held that the settlement was therefore binding, although there was no consideration for the new contract; but it was likewise held that so long as a contract between a debtor and creditor, by which the latter agreed to accept a less amount than owing on a past-due indebtedness, remained unexecuted, it was void and unenforceable because there was no new consideration. In the case at bar, the original contract had been executed by the full discharge of the mutual obligations of the parties thereto, but the contract to pay additional compensation for the performance of the obligations of the original contract was unexecuted, and the mere performance by the contractor of the obligations imposed upon him by the original contract did not estop the party making the promise to pay additional compensation from asserting that the promise was without consideration.

It follows from the views herein expressed that the peremptory instruction requested by the appellant should have been given, and therefore the judgment of the court

below will be reversed and judgment entered here for the appellants.

Reversed, and judgment for appellants.