MISSISSIPPI VALLEY UTILITIES CORPORATION v. WILLIAMS.

(Division B. Oct. 24, 1932.)

[143 So. 889. No. 30164.]

Jas. Stone & Sons, of Charleston, and Judge Julian C. Wilson, of Memphis, Tennessee, for appellant.

W. H. Clements, of Rolling Fork, for appellee.

Argued orally by **Phil Stone** and **Julian C. Wilson**, for appellant, and by **W. H. Clements**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee filed his bill against appellant in the chancery court of Sharkey county seeking the specific performance of a contract, by the terms of which appellant agreed to sell to appellee for a five-year period beginning the 23rd of May, 1929, the output of its ice plants at Rolling Fork and Anguilla at five dollars per ton, and to recover damages for a breach of the contract; and an accounting in order to ascertain the amount of the damage, and to restrain appellant from selling the output of its said plants to anyone else during the life of the contract. A temporary injunction was issued in accordance with the prayer of the bill, and on final hearing on bill, answer, amended answer, and proofs a final decree was rendered perpetuating the injunction and awarding appellee damages for the breach of the contract in the sum of one thousand three hundred sixty-five dollars and forty-one cents. From that decree appellant prosecutes this appeal.

On the 23rd day of May, 1929, appellant and appellee entered into a written contract to become effective the 31st day of May, 1929, and to terminate five years thereafter, the pertinent parts of which are substantially as follows: Appellant owned an ice plant at Rolling Fork and one at Anguilla and agreed to sell to appellee, and the latter agreed to buy, his entire requirements of ice for his ice business in that territory (appellee being engaged in the retail sale of ice) from the Rolling Fork and Anguilla plants at and for five dollars per ton. The contract provided further that appellant should sell its ice during the life of the contract exclusively to appellee and the latter agreed to take his full requirements from appellant. It was further stipulated that appellee's services should be rendered in a satisfactory manner to appellant and the customers of the ice plants. The parties functioned under this contract until the latter part of May, 1930, when appellee resigned as manager of the

two plants by agreement between the parties. Thereafter they continued to operate under the contract as so modified, appellee paying appellant five dollars a ton for his ice requirements until the 3rd day of April, 1931, at which time they agreed on the price of six dollars per ton.

Appellant's contention is that this change in the contract was to continue only during the balance of the ice season of that year, and thereafter for the balance of its term the contract was canceled; while appellee's contention is that there was no agreement to cancel the contract at the end of the ice season of that year, and that he agreed to pay six dollars per ton, instead of five dollars per ton as provided by the contract, in order to avoid a lawsuit.

At the end of the ice season of 1931, some time in October, appellant notified appellee that the contract was canceled and at an end. From the 3rd day of April up to that time appellee had paid appellant six dollars a ton for his ice requirements, the difference between five dollars a ton and six dollars a ton amounting to one thousand three hundred sixty-five dollars and forty-one cents, which amount the final decree awarded appellee as damages for the breach of the contract by appellant.

Appellant contends that appellee breached the contract, in that his services were not satisfactory to appellant or to the customers of the ice plants and that such dissatisfaction was caused by appellee's drunkenness, and that therefore appellant had the right to put an end to the contract at the close of the ice season of 1931. Appellee contends that his services were not unsatisfactory, and that appellant attempted to put an end to the contract because appellant wanted a higher price for the output of its ice plants. The appellee as a witness in his own behalf admitted that on the 3rd day of April, 1931, he agreed to pay six dollars a ton for the balance of that ice season, but denied that he did it voluntarily.

He testified that he was driven to the agreement in order to avoid a lawsuit with appellant. The evidence on behalf of appellant tended to show that on the 3rd day of April, 1931, when appellee agreed to pay six dollars a ton for the balance of the ice season, there was a controversy between the parties as to their respective duties and obligations under the contract, appellant undertaking to maintain, as stated, that appellee's services were not satisfactory either to it or to the customers of the ice plants. The evidence on the part of appellee tended to establish the contrary, that in truth and in fact there was no real controversy between the parties as to their respective rights and obligations to be compromised; that appellant's claim that appellee's services were not satisfactory to appellant and the customers of the plants was a mere pretense for the purpose of increasing the price of the ice to be paid by the appellee.

The chancellor in his decree necessarily found the material facts in favor of appellee, and there was ample evidence to sustain such finding. Certainly it cannot be said that the finding of the chancellor was contrary to the overwhelming weight of the evidence.

However, the decree is erroneous in so far as it awards appellee a money judgment in the sum of one thousand three hundred sixty-five dollars and forty-one cents. The evidence shows that this amount represents the difference between five dollars a ton and six dollars a ton for the ice bought by appellee during the balance of the season of the year 1931 after April 3rd of that year. The chancellor held that since the contract was breached by appellant and not by appellee the latter had the right to recover back this sum. As stated above, appellee admitted as a witness in his own behalf that he agreed to pay this additional price for the balance of that season, but insisted that there was no consideration for the agreement and that he was forced to make it in order to avoid a lawsuit with appellant. In other words, that there was

no real substantial controversy between the parties to compromise, and therefore his agreement to pay the additional price for the ice was without consideration. Taking either horn of the dilemma, appellee was not entitled to recover this amount. If, on the 3rd day of April, 1931, there had been a binding compromise and modification of the contract entered into by the parties providing for the payment of six dollars a ton instead of five dollars a ton by the appellee for the balance of the ice season, the appellee would be precluded from recovering the difference in the price. Where there is a real substantial dispute between the parties to a contract as to their respective rights and obligations, and such dispute is compromised and settled, such compromise and settlement is binding upon both parties, and a sufficient consideration for such a compromise is a promise for a promise. Fair Tie Co. v. Warrell, 147 Miss. 412, 112 So. 24; Leggett v. Vinson, 155 Miss. 411, 124 So. 472; Greener & Sons v. Cain & Sons, 137 Miss. 33, 101 So. 859.

If the compromise settlement was without consideration (as the chancellor necessarily held), as long as it was unexecuted it was unenforceable, but when executed, appellee, under the law, could not rescind and recover back the money paid under it. For illustration: A, without any consideration, enters into a contract to convey land to B (to make a gift of it), or to transfer personal property to him, or to perform a personal service for him, or to pay him a sum of money; as long as such contracts are unexecuted B would have no remedy either for specific performance or for damages for their breach The reason, of course, is that B would suffer no injury— no loss— and therefore would have no right to call the courts to his aid. Leggett v. Vinson, supra; Bell v. Oates, 97 Miss. 790, 53 So. 491.

However, if the promise to give is actually executed— the gift completed—the giver cannot recover his gift.

Clayton v. Clark, 74 Miss. 499, 21 So. 565, 22 So. 189, 37 L. R. A. 771, 60 Am. St. Rep. 521; Leggett v. Vinson, supra; Greener & Sons v. Cain & Sons, supra. None of the cases above referred to are in point on their facts, but they lay down the principles we have stated.

In Clayton v. Clark, supra, the holder of an overdue note surrendered the note to the maker on the payment by the latter of a sum less than the amount due; afterwards the holder sued the maker for the balance due on the note when the compromise settlement was made. The court held that the holder was not entitled to recover, that the compromise while unexecuted was unenforceable because without consideration, but when executed it amounted to a gift of the unpaid balance by the holder of the note to the maker, which was binding on the parties.

In Leggett v. Vinson, the court held that the promise of the owner to pay an additional sum to that provided in the original contract for the construction of a building without in any way varying, altering, or changing the original contract, except to pay the additional amount, was without consideration and could not be enforced by the builder. In that case, after the building was completed by the contractor he sued the owner for an additional amount, which the latter agreed to pay during the construction of the building but without any alteration of the original contract in any other respect. The owner paid the contractor the original contract price. If the facts of that case had been the other way around, that is, if the owner had actually paid to the contractor the additional sum agreed on during the construction of the building, he could not have recovered it back, notwithstanding there was no consideration for the promise to pay the additional sum, because it would be an executed gift, and in such case the court would leave the parties where it found them.

In Cragin v. Eaton & Bro., 133 Miss. 151, 97 So. 532, 34 A. L. R. 508, the court held that there was a binding

modification of the contract. The contract was executed as modified, the cross-ties were delivered and accepted and the modified price paid by the purchaser. The court held that the seller could not sue for the larger price provided by the original contract.

We hold, therefore, that appellee was not entitled to recover the difference in the price of the ice paid by him after April 3, 1931, regardless of whether there was any consideration for his agreement to pay the additional price or not. Since appellee has already paid the amount to appellant, he cannot recover it back; because it is an executed gift.

We do not think the other questions argued in the case are of sufficient seriousness to call for a discussion by the court.

It follows from these views that the decree is affirmed, except as to the money judgment of one thousand three hundred sixty-five dollars and forty-one cents; it is reversed that far, and the costs of this appeal equally divided between the parties.

Reversed in part, and affirmed in part.