The RIVERVALLEY COMPANY, Inc.,
Plaintiff,

v.

DEPOSIT GUARANTY NATIONAL
BANK et al., Defendants.

No. GC 70-6-S.

United States District Court,
N. D. Mississippi,
Greenville Division.

June 30, 1971.

John B. Clark, of Daniel, Coker, Horton, Bell & Dukes, Jackson, Miss., for plaintiff.

Milton H. Mitchell, of Carter, Mitchell & Robinson, Jackson, Miss., J. A. Lake, of Lake, Tindall & Hunger, Nathan P. Adams, Jr., of Felts, Russell & Adams, Greenville, Miss., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ORMA R. SMITH, District Judge.

This action was tried to the court without a jury at the United States Courthouse in Greenville, Mississippi on April 12 and 13, 1971. At the conclusion of the trial the court took the case under advisement for decision at a later date and requested briefs from counsel. Briefs having been received, the action is now ripe for decision.

The court's findings of fact and conclusions of law follow.

Plaintiff, The Rivervalley Company, Inc., (Rivervalley) is an Arkansas corporation. The capital stock of Rivervalley, consisting of 1000 shares, is owned by the family of Dr. A. F. Black. Dr. Black resides in Monticello, Arkansas where the corporation is domiciled. Dr. Black owns 550 shares of the capital stock of the corporation and is the president. Mrs. Black, his wife, owns 150 shares and is the secretary. Dr. Black's two sons, William F. Black and Charles F. Black, each own 150 shares and each is a vice-president of the corporation. The four constitute the board of directors.

Monticello, Arkansas is situated just across the Mississippi river from Greenville, Mississippi. For several years prior to the events leading to this controversy, Rivervalley was engaged in business in Greenville. In the beginning Rivervalley operated a marine type business, dealing principally with motorboats, outboard motors, engine parts, and other items of a marine nature. However, in 1962 Rivervalley decided to enter into the new and used car business in Greenville.

Prior to entering the new and used car business in Greenville Rivervalley adopted a resolution authorizing William F. and Charles F. Black to transact any and all business of the corporation at Greenville. Five days later, however, the board of directors adopted a resolution which revoked the authority previously granted William F. and Charles F. Black. The resolution in addition to withdrawing the authority of the two vice-presidents contained a provision that a contract, deed of trust or mortgage transaction could not be entered into by the corporation unless the transaction be authorized by resolution adopted by the affirmative vote of all directors or stockholders and spread upon the minutes of the corporation. The resolution further provided that any contract, deed of trust, or mortgage so authorized must be signed by three members of the board of directors or stockholders, one of which should be the president of the corpora-

tion. The corporate minutes do not reflect any change in the authority granted by the resolution just mentioned.

Rivervalley selected the Commercial National Bank of Greenville as its depository in Mississippi and submitted to the bank a certified copy of a resolution represented to have been adopted by its board of directors on August 30, 1962. The resolution authorized any two of Rivervalley's president, vice-president, secretary or treasurer, "to borrow money for and on behalf, and in the name of, this corporation and sign, execute and deliver the notes of this corporation therefore, * * * to execute deeds of trust on any property belonging to the corporation * * * and generally to do and perform any and all things which may be necessary or required by said bank in effecting loans for the corporation from said bank". The corporate minute book of the corporation does not show that this resolution was actually adopted by the board and spread upon its minutes.

The record also reflects that Rivervalley in December 1965 began doing business with First National Bank of Greenville. Rivervalley delivered to First National a certified copy of a resolution, represented by the certificate executed by the secretary of the corporation to have been adopted by its board of directors on December 9, 1965, extending authority to the president, and Charles F. Black or William F. Black to borrow funds from the bank on behalf and for the use of the corporation and to execute deeds of trust on its property to secure the advances. The terminology of the resolution is similar to that used in the resolution certified to the Commercial National Bank and the Deposit Guaranty National Bank hereinafter mentioned. The resolution does not appear in the minute book of the corporation.

After opening its account with Commercial National Bank, Rivervalley opened an account with defendant Deposit Guaranty National Bank, at its Greenville, Mississippi office. In connection with its account with the bank Rivervalley delivered to the bank a certified copy of a resolution said to have been adopted by its board of directors on January 28, 1965. This resolution contained language similar to that contained in the resolutions submitted to the Commercial National Bank and First National Bank and authorized any two of its president and vice-presidents to borrow funds for the corporation, to execute notes as evidence of such advances, and to execute for and on behalf of the corporation deeds of trust on its property to secure the debt. At the same time signature cards were furnished Deposit Guaranty containing the names of A. F. Black, President, Charles F. Black, Vice-President, and William F. Black, Vice-President. Though the certificate attached to the copy of the resolution certified that the resolution was adopted by Rivervalley's board of directors on January 28, 1965 the minutes of the corporation do not reflect that such a resolution was adopted at that time.

Rivervalley borrowed money from the Washington County Savings and Loan Association on July 29, 1965 and executed a deed of trust on certain portions of its real property situated in Greenville to secure the debt thus created. The deed of trust was signed by A. F. Black, President, and Mrs. A. F. Black, Secretary, for and on behalf of Rivervalley. The certificate of the Notary Public, before whom the deed of trust was acknowledged, recites that Dr. and Mrs. Black represented to the Notary Public that they were duly authorized by Rivervalley to execute the deed of trust. The deed of trust was recorded in the Land Records of Washington County, where the City of Greenville is situated, on July 29, 1965. Such recordation constitutes a public record and serves to give notice of its existence to the public generally.

At the inception of its business connection with Deposit Guaranty, Rivervalley applied for a line of credit. Deposit Guaranty agreed to lend Rivervalley $6,000, provided Dr. Black would personally endorse the note evidencing the loan. The loan was consummated on

this basis. Financial statements were secured by the bank from both Rivervalley and Dr. Black.

Sometime after opening its account with Deposit Guaranty Rivervalley discussed with Mr. Thomas H. Coppage (Coppage), a lending officer of the bank who was in charge of Rivervalley's account, the need of the corporation from time to time for quick funds. Coppage agreed to permit Rivervalley to deposit drafts in reasonable and limited amounts for which Rivervalley would take immediate credit and against the proceeds of which immediate withdrawals could be made. The drafts were to be drawn on Dr. Black, through his banking connection in Monticello. Rivervalley agreed that Dr. Black would promptly pay the drafts when presented for payment. Initially, Deposit Guaranty sent the drafts for collection through regular channels. However, on or about February 3, 1967, Coppage learned that large amounts of money were involved in this draft arrangement. Realizing that the credit extended by virtue of the drafts to Rivervalley was greatly in excess of Rivervalley's authorized line, Coppage directed that the drafts be sent direct to Dr. Black's bank in Monticello. Beginning with February 3, 1967, the clearance time on the drafts deposited by Rivervalley with Deposit Guaranty ranged from four to twelve days.

On Monday, February 27, 1967, Coppage discovered that outstanding and unpaid drafts aggregating the sum of $18,300, drawn by Rivervalley on Dr. Black, remained unpaid at the Monticello Bank. Some of these drafts had been in Monticello awaiting payment for several days. Accordingly, Coppage sent a letter to Rivervalley, addressed to "Messrs. Blacks" calling attention to the unpaid drafts and advised that Deposit Guaranty would not permit the continuance of such an arrangement. Coppage also advised the Blacks that he had tried to call them over the telephone to discuss the matter, but had been advised by the manager in charge of the business in Greenville that they were in Monticello. Coppage requested them to call at the bank to discuss the matter on Tuesday or Wednesday, February 28, or March 1. The drafts were not paid and Coppage, on March 2 or 3, by long distance, instructed the Monticello Bank to return the drafts. At the time Coppage requested the return of the drafts there were being held for payment drafts as follows:

| Date of Draft | Amount |
|---|---|
| Feb. 16, 1967 | $ 3,500.00 |
| Feb. 20, 1967 | 3,500.00 |
| Feb. 21, 1967 | 1,800.00 |
| Feb. 21, 1967 | 2,000.00 |
| Feb. 22, 1967 | 2,500.00 |
| Feb. 23, 1967 | 2,500.00 |
| Feb. 24, 1967 | 2,500.00 |
| Total | $18,300.00 |

On March 3, 1967 the Monticello Bank returned the drafts above described, except the one dated February 16, 1967, for $3,500, which was paid on February 27, 1967. The aggregate amount of the drafts returned by the Monticello Bank to Deposit Guaranty was $14,800.

On February 27, 1967 Rivervalley deposited a draft drawn on Dr. Black for $3,800. Coppage reversed the entry and charged the draft back to Rivervalley's account, thereby overdrawing the account in the sum of $1,170.70. Thereafter Deposit Guaranty paid checks drawn on the account, so that on March 2, 1967, Rivervalley's account was overdrawn $5,467.07.

On March 2, 1967, after banking hours, Coppage went to the place of the business of Rivervalley in Greenville and there had a conference with the four stockholders, directors and officers of Rivervalley. Coppage informed them that Rivervalley's indebtedness must be paid or security given therefor. Coppage offered to accept second and third deeds of trust on the real property of Rivervalley situated in Greenville. The prior mortgages amounted to approximately $63,000. In the course of the conversation Coppage stated that unless the indebtedness was paid or security given he

would turn the matter over to attorneys for the bank for prosecution.

Coppage returned to the bank. The Blacks, as a group, discussed the matter. There were no minutes entered in the minute book evidencing the meeting, though all stockholders, directors and officers of the corporation were present and participated in the meeting. There was a difference of opinion as to whether Rivervalley should comply with the request of the bank. Dr. Black, the president, and Charles F. Black, a vice-president, elected to give the security. Dr. Black followed Coppage to the bank and executed the papers. Charles F. Black dropped by the bank the next day and executed the papers. The corporate seal was affixed. The note was for $21,-000 and due ninety days from date.

At the time of the execution of the note and deed of trust Coppage informed Dr. Black that he would try to work with them in liquidating the indebtedness. There was not, however, a definite agreement reached.

The $21,000 note was due May 31, 1967. Deposit Guaranty also held Rivervalley's note for $5,000, endorsed by Dr. Black, representing the balance due on a $6,000 loan negotiated by Rivervalley when it first began to do business with Deposit Guaranty. The latter note had been renewed several times, and, in March 1967, Coppage talked with Dr. Black about both notes. Coppage offered to renew the $5,000 note for 90 days (This note was due March 31, 1967), provided the sum of $5,000 was paid on the $21,-000 note to become due May 31, 1967. This payment was not made.

The $21,000 note was not paid on its due date. Coppage then wrote a letter to Rivervalley on June 2, 1967, confirming a conversation which he had with Dr. Black the previous day with regard to both past due notes. In this letter Coppage informed Rivervalley that the executive committee of the bank required some reasonable payment to be made on the notes; that satisfactory arrangements must be made for the bank to carry the balance; and that this must be done within ten days, otherwise, it would be necessary to foreclose the deed of trust and institute suit on the $5,000 note. This letter was posted by the bank on June 2, 1971, addressed to "The Rivervalley Company, Inc., 823 Highway 82 East, Greenville, Miss." Rivervalley's officials denied that the letter was received, but the letter was not returned to the bank.

Dr. Black went to see Coppage on June 19, 1967, carrying with him the sum of $5,000 which he intended to apply on the $21,000 note, provided the bank would renew the note, and release the Walnut Street property from the deed of trust. Dr. Black contended that Coppage had previously agreed to do this. Dr. Black also had an additional $5,000 available for his use, but this fact was not made known to Coppage. However, Coppage informed Dr. Black that the situation had changed and he could not renew the note on those conditions. Dr. Black did not tender the money.

The deed of trust executed by Rivervalley contained a power of sale which authorized the trustee to sell the property conveyed thereby at public sale, after having first advertised the sale as required by Miss.Code Ann. § 888 (1956). This section provides that the sale of land under a deed of trust shall be made after notice of the sale has been advertised for three consecutive weeks preceding the sale in a newspaper published in the county, and by posting a copy of the notice at the courthouse of the county for that period of time.

Deposit Guaranty foreclosed the deed of trust. The trustee advertised the sale, as required by Section 888, posting a notice of the sale at the courthouse of the county on June 19, 1967, and publishing the notice in the Delta Democrat Times, a newspaper having a general circulation in the county, in its issues of June 23, June 30, July 7, July 14, all in the year 1967. The sale was conducted on July 18, 1967. The sale was advertised and conducted in all respects as required by law. Deposit Guaranty bought the property covered by the deed of trust at the

sale for $21,000, subject to outstanding liens against the property. A trustee's deed was executed and delivered to Deposit Guaranty on July 21, 1967. The deed was recorded in the Land Records of the county on July 28, 1967. Deposit Guaranty applied the proceeds of the sale to the payment of the $21,000 note, leaving the $5,000 note unpaid.

Deposit Guaranty sold one parcel of the property purchased by it at the sale to defendants, George T. Browne and Helen Browne, husband and wife (hereinafter referred to in the singular as Browne) and conveyed the property to them by warranty deed on December 18, 1967. Before the sale of the property by the trustee Rivervalley vacated the property sold to Browne, and, at the time Browne purchased the property, Rivervalley was not in possession thereof. Browne has since erected extensive improvements on the property. Rivervalley has never given notice of any kind to Browne that it has or claims an interest in the property. On the other hand, Rivervalley has permitted the improvements to be made without protest. Browne was not aware that Rivervalley claimed an interest in the property until this action was filed.

The evidence shows that the Blacks had actual notice of Browne's occupancy and that the improvements were being made on the property.

Browne borrowed $115,000 from defendant Consolidated American Life Insurance Company (Consolidated) on June 28, 1968. To secure the loan Browne executed and delivered to Consolidated a deed of trust on the property. Browne's deed and Consolidated's trust deed were promptly and duly recorded in the Land Records of the county. Pursuant to Consolidated's request Browne procured and delivered to Consolidated a Mortgagee's Policy of Title Insurance with Commerce Title Guaranty Company, Memphis, Tennessee (Commerce Title).

After the foreclosure sale Deposit Guaranty sued Dr. Black and Rivervalley in an Arkansas court on the $5,000 note above mentioned. Dr. Black and Rivervalley contended in the Arkansas action that the note and deed of trust, under which Deposit Guaranty acquired title to the property, were invalid; that Deposit Guaranty violated its agreement to renew the $21,000 note; that the foreclosure sale was illegal and constituted a fraud upon Rivervalley; that the amount for which the property sold was inadequate; that Deposit Guaranty should be charged with the value of the property; and that, in any event, Deposit Guaranty should be required to apply the proceeds of the sale pro rata against the two notes. The Arkansas trial court denied all contentions of Dr. Black and Rivervalley, except the contention that the proceeds of the sale should be applied pro rata against the notes. The court entered a judgment for Deposit Guaranty in the sum of $968.00, plus interest and attorney's fee. The total recovery was $1,369.06.[1] Dr. Black delivered to Deposit Guaranty on October 24, 1969 his check for $1,369.06, the amount due on the judgment, including the balance of principal due on the $5,000 note, interest and attorney's fees. There was inserted on the face of the check the following: "For settlement in full of claim". On the back of the check there appears the following: "Accepted as payment in full settlement of all claims of the payee against Dr. A. F. Black, William Black, Charles F. Black, and/or Rivervalley Company, Inc." The check was endorsed and cashed by Deposit Guaranty. The switching of credits from the $21,000 note to the $5,000 note resulted in leaving a balance due on the $21,000 note of $4,032. In the Arkansas case the trial court said: "The bank does not plead for a judgment for the balance of $4,032 due on the $21,000 note, hence such relief is not being considered by the court".

---

1. The trial court was affirmed by the Arkansas Supreme Court. Deposit Guaranty National Bank v. River Valley Company, Inc., 247 Ark. 226, 444 S.W.2d 880 (1969).

Rivervalley filed its complaint in the action sub judice on December 8, 1969 against Deposit Guaranty, Browne, Home Appliance Company (Home), Consolidated, and First National Bank of Greenville in the United States District Court for the Southern District of Mississippi, Jackson Division. The action was transferred to this court on January 13, 1970. Rivervalley seeks by its action to set aside, as null and void, the deed of trust given to Deposit Guaranty by Rivervalley, dated March 2, 1967, the trustee's deed delivered to Deposit Guaranty, dated July 21, 1967, the warranty deed from Deposit Guaranty to Browne, dated December 18, 1967, a lease contract from Browne to Home, dated July 5, 1968, an assignment of said contract by Home to First National of Greenville, dated July 12, 1968, and the deed of trust given to Consolidated by Browne, dated June 28, 1968. Rivervalley seeks, also, a decree confirming in it the title in and to the real property conveyed by the deed of trust to Deposit Guaranty, and an award of damages against Deposit Guaranty in the sum of $25,000, with attorneys' fees and costs.

Rivervalley charges, inter alia, in the action sub judice that Deposit Guaranty wrongfully and unlawfully recalled the drafts above mentioned which created a large overdraft in Rivervalley's checking account; that Deposit Guaranty wrongfully and unlawfully refused to honor Rivervalley's checks which action resulted in great damage to Rivervalley; that the execution of the $21,000 note and deed of trust to Deposit Guaranty was the result of unlawful coercion and the note and deed of trust therefore void and unenforceable; that the execution of the deed of trust was not authorized by Rivervalley; that Deposit Guaranty agreed to extend the due date of the $21,000 note, and thereafter defaulted in the agreement; and that since these event occurred Browne, Consolidated, Home and First National have acquired interests in the property, subject to Rivervalley's superior right. During the progress of the case Home and First National were dismissed from the action on a summary judgment and their interest in the property is no longer at issue.

Deposit Guaranty answered the complaint denying Rivervalley's charges that the $21,000 note, the deed of trust and the trustee's deed were void, and asserting their validity. Deposit Guaranty contends that its dealings with Rivervalley were legal and its actions correct in the handling of Rivervalley's account. In addition Deposit Guaranty asserts the additional defense that the Arkansas action constitutes res judicata on all issues involved in the action sub judice, except the accord and satisfaction issue growing out of the check for $1,369.06, dated October 24, 1969.

Deposit Guaranty filed a counterclaim seeking to recover for the $4,032 balance due on the $21,000 note. In answer to the counterclaim Rivervalley asserts the defense of accord and satisfaction and the Mississippi Statute of Limitations, Miss.Code Ann. § 720 (1956).[2]

Browne asserts the validity of the deed of trust and the trustee's sale, through which Browne claims title; the status of purchaser for value without notice of any infirmity in the title; and also estoppel, contending that Rivervalley, and its of-

2. Miss.Code Ann. § 720 (1956) provides:
"Installment notes—after foreclosure of mortgage.
In all cases, foreclosure of any deed of trust, mortgage, vendor's lien, or other instrument, no suit or action shall hereafter be commenced or brought upon *any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless* *the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes.* Provided, further, that no action shall be commenced or brought upon any such note or notes where such security has heretofore been foreclosed, except such action be brought or commenced within one year from the effective date of this Act." (Emphasis supplied).

ficers, directors and stockholders are estopped to question the title, because of their conduct as above outlined.

Consolidated adopted the defenses of Deposit Guaranty and Browne and filed a crossclaim against Browne by which it seeks to recover attorney's fees incidental to the defense of the suit.

After considering all the evidence in the case the court is of the opinion and so finds that Rivervalley is not entitled to any recovery in this action, and that the complaint should be dismissed on the merits; that Deposit Guaranty is entitled to recover against Rivervalley on its counterclaim the balance due on the $21,000 note; and that Consolidated is entitled to recover from Browne reasonable attorney's fees incurred in its defense of the action. All parties are entitled to recover their costs against Rivervalley.

The court finds that Coppage was well within his rights in recalling the drafts from the Monticello Bank. At the time the drafts were recalled, the Monticello Bank held drafts aggregating the sum of $18,300. Some of these drafts had been with the bank for a number of days. Mrs. Black testified at the trial that the drafts were never presented to her for payment.[3] But, the uncontradicted evidence in the case shows that only one of the drafts in the sum of $3,500 was paid on February 27, 1967, though there were other drafts awaiting payment at the time, which were not paid. The unpaid drafts aggregated $14,800 and were not returned to Deposit Guaranty until March 3, 1967.

When Coppage discovered on February 27, 1967 that Rivervalley's unsecured line was in excess of $21,000, it was encumbent upon him, as an official of the bank, to initiate such action as was reasonably necessary to protect the interest of the bank. There was not anything unusual in the fact that Coppage went to the place of business of Rivervalley in Greenville three days later, on March 2, 1967, after banking hours, to collect the debt or obtain security therefor.

Rivervalley's financial condition on February 27, 1967 was precarious, to say the least of it. Rivervalley's paid-in capital was only $1,000. The company had an operating loss of $12,716.59 in 1964, $11,429.82 in 1965 and $11,137.26 in 1966. At the end of the taxable year 1966, Rivervalley's paid-in or capital surplus account had a deficit in the sum of $459.75, and the shareholders' undistributed taxable income account had a deficit in the sum of $41,850.50. Under all the circumstances Coppage was well within his rights in bringing the matter to a conclusion. Deposit Guaranty was not obligated by any contract or binding agreement to continue the line and had the legal right to call the advances.

The fact that Coppage threatened to turn the matter over for prosecution to the attorneys for the bank, should the indebtedness not be paid or security given therefor, does not amount to such duress and compulsion as will render void and unenforceable the $21,000 note and the deed of trust. Deposit Guaranty had a perfectly legal right to pursue all legal remedies at its command to collect the debt. The officers and directors of Rivervalley were not justified in concluding that Coppage was threatening criminal prosecution. All directors were present at the conference with Coppage on March 2, 1967, and discussed the matter after Coppage left the premises. Two directors did not desire to comply with the request, but, the other two, after mature consideration, decided to accede to the demands of Coppage. Dr. Black went to the bank that same afternoon and executed the note and deed of trust. Charles F. Black executed the papers the next day. In order to render a contract void because of duress and compulsion the complaining party must have been deprived of the free exercise of his own will. The conduct of the dominant party must have been such as to override the volition of the victim. It is not sufficient that one party insists upon a legal right and the other party

---

3. Mrs. Black acted for her husband in receiving and paying the drafts drawn on Dr. Black.

yields to such insistence. See Duckworth v. Allis Chalmers Manufacturing Co., 247 Miss. 198, 150 So.2d 163, 165 (1963). The evidence in this case does not justify the court in holding that Rivervalley's president and vice-president were deprived of the free exercise of their own will in the execution of the deed of trust and note.

This court is not persuaded that Dr. Black and Charles F. Black were not authorized by Rivervalley to execute the documents in question. It has been shown that the stockholders of Rivervalley at a meeting held February 9, 1962, adopted a resolution that no member of the board of directors or stockholder could make a contract, deed of trust, or mortgage unless all directors or stockholders agreed thereto, and such agreement evidenced by a resolution spread upon the minutes of the corporation; and that any contract, deed of trust, or mortgage to be made and executed under such authority, must be signed by three members of the board of directors or stockholders one of whom must be the President. The officers, directors and stockholders of Rivervalley did not follow the directive of this resolution and the existence thereof was not known to any of the parties in this action until after the action had been filed. In operating the business in Greenville, Rivervalley represented to at least three banks that its president and any one of its vice-presidents were authorized to borrow funds for its operations, pledge its property for security, and execute, among other documents, deeds of trust on its property. And, in one instance, two of Rivervalley's officers executed a deed of trust on real property belonging to Rivervalley situated in Greenville to a savings and loan association. Each of the four stockholders, directors and officers of Rivervalley participated, one way or the other, in some of these transactions. Deposit Guaranty had the right to rely upon the certified copy of the resolution furnished it by the secretary of the corporation under the seal of the corporation. Rivervalley cannot be heard to say that the officers who executed the note and deed of trust in question were not authorized to do so. The court concludes that the deed of trust was a valid conveyance, under Mississippi law, even though the two officers who executed it might not have been actually authorized to do so by corporate resolution spread upon the minutes of the corporation. Miss.Code Ann. § 841 (1956) provides "any private corporation may convey lands by a conveyance signed in its name by an officer or by an authorized agent or attorney in fact". Either of the two officers who executed the deed of trust was authorized by statute to execute the deed of trust. Deposit Guaranty was not obligated to go behind the statute or behind the certified copy of the corporate resolution delivered to it by the secretary of the corporation and over her signature, to ascertain whether the two officers, executing the deed of trust, were in fact authorized to do so by corporate resolution actually spread upon the corporate minutes.

The court concludes, also, that Rivervalley did not have a binding and enforceable agreement with Deposit Guaranty that Deposit Guaranty would extend the due date of the $21,000 note upon the payment of $5,000 and also release the Walnut Street property from the deed of trust. Such conversations as were had between Coppage and Dr. Black cannot be construed to create a contract on the part of Deposit Guaranty to renew the paper and release the property, as Dr. Black contends. Additionally, there was no consideration for such an agreement.

The trustee gave the legally required notice of the sale of the property under the deed of trust. Nothing more is required of the trustee under Mississippi law to enable a valid sale to be held. There is nothing in the record to justify the holding that the sale was not. fairly and openly conducted, nor that the price for which the property sold was inadequate. Rivervalley cannot be heard to say that it did not have knowledge that

the sale would be conducted. The deed of trust sets forth the manner in which the sale was to be conducted and the notice to be given therefor. The public notice, advertised as required by law and the terms of the deed of trust, is the only notice to which Rivervalley was entitled. Additionally, the court concludes that Rivervalley had notice through the June 2, 1967 letter of Deposit Guaranty's intention to foreclose.

█ The court finds, also, that the Arkansas court upheld the validity of the $21,000 note, the deed of trust and the trustee's sale. Rivervalley may not relitigate these matters in this court. The claims are identical, they were actually litigated, and their determination was necessary to the decision of the Arkansas court. See James Talcott Inc. v. Allahabad Bk., LTD, 444 F.2d 451 (5 Cir. Opinion dated May 5, 1971).

█ The court finds that Browne was a purchaser for value without notice of Rivervalley's claim of the property involved in this action, and, additionally, that the abandonment of the property by Rivervalley and its failure to contest Browne's occupancy, permitting Browne to make extensive improvements thereon without making known its claim, operates to estop Rivervalley from asserting any claim to the property as against Browne and Consolidated.

█ The claim of Deposit Guaranty against Rivervalley for the balance due on the $21,000 note was not submitted to the Arkansas court for adjudication and the court's decision is not res judicata as to the same.

After the determination of the Arkansas case, attorneys for Dr. Black delivered to attorneys for Deposit Guaranty the check hereinbefore described in settlement of the judgment rendered against Rivervalley and in favor of Deposit Guaranty. The amount of the check was the exact amount of the judgment. The check had on its face "For settlement in full of claim". If there had not been any other notation on the check there could be no doubt but that the check was tendered in settlement of the judgment. There was, however, typed on the back of the check "Accepted as payment in full settlement of all claims of the payee against Dr. A. F. Black, William Black, Charles F. Black and/or Rivervalley Company, Inc."

Rivervalley argues that once the check was accepted by Deposit Guaranty all other debts due by Rivervalley to Deposit Guaranty were thereupon satisfied and released. Rivervalley relies on May Bros. v. Doggett, 155 Miss. 849, 124 So. 476 (Miss.1929), in which the court held:

"It seems to be the general rule, as announced by the text-writers (Citation omitted), that where a claim is unliquidated, or in dispute, the acceptance of a sum tendered by a debtor on condition that it be accepted in full settlement of the claim constitutes an accord and satisfaction; but in this state this rule applies to liquidated as well as unliquidated demands. * * "

Rivervalley also relies upon two other Mississippi cases, State Highway Department v. Duckworth, 178 Miss. 35, 172 So. 148 (1937) and Roberts v. Finger, 227 Miss. 671, 86 So.2d 463 (1956). In *Duckworth* the court said:

"This court is thoroughly committed to the doctrine that, where money is paid with a recital that it is in full settlement of all demands, or of all accounts, or similar wording, when it is accepted, it is full settlement therefor, although there might be, in fact, more due than the recital in the check or warrant showed. * * * " [4]

█ The doctrine enunciated in *Duckworth* is not, however, absolute. The essential element of accord and satisfaction is an agreement or a meeting of the minds of the parties. The agreement must have all the essentials of a contract and may be express or implied from the circumstances. The circumstances of the

4. 172 So. at 150.

case must be such that the payee understands that a particular account is intended to be satisfied, and there is no accord and satisfaction of another or different account or claim. See, Roberts v. Finger, supra.[5] The facts developed in the trial of this action do not bring it within the *Duckworth* rule. For the check in question to constitute accord and satisfaction the circumstances must have been such that Deposit Guaranty knew or should have known that the check was tendered by Dr. Black in satisfaction of the balance due on the $21,-000 note after the transfer of credits. The facts in the case do not justify such a conclusion.

▆▆▆ Rivervalley relies on Miss.Code Ann. § 720 (1956) to bar the counterclaim demand. This section provides, in part:

" * * * [No] suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, * * * where said note or notes are secured by * * * deed of trust, * * * upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure. * * * "

Section 720 does not apply on a single note. It applies only to installment notes or to a series of notes of three or more. The action sub judice involves only two notes, neither of which is an installment note.

The statute does not apply to the demand of Deposit Guaranty. Deposit Guaranty is entitled to recover from Rivervalley the sum of $4,032, with interest at 7% per annum from March 2, 1967, and 10% of the total as attorney fees.

▆▆▆ Browne warranted the title to the land conveyed by Browne's deed of trust to Consolidated. The trust deed contains a provision, the pertinent part being as follows:

"Seventh. * * * All taxes, assessments, liens, judgments, and insurance premiums paid by the said Beneficiary, (Consolidated) and all necessary expenses incurred by said Beneficiary in connection therewith including any expense incurred in defending the title of the grantor (Browne) to this real estate, where necessary for the protection of the said Beneficiary's interests, or in defending his trust deed as a valid first lien on the real estate described or intended to be described herein, where necessary; or in seeking to have the trust deed reformed by judicial proceedings, where necessary because of mistake in this act, shall constitute a part of the debt secured by this mortgage and become immediately due and payable to the said Beneficiary. * * * "

It is, therefore, Browne's duty to defend the title to the property. Browne seeks to avoid this obligation because Commercial Title issued a policy of mortgagee insurance to Consolidated at Browne's instance and for which he paid the premium. The title policy does not insure the owner, but only the mortgagee. The policy contains a subrogation clause which subrogates Commercial Title to any rights of Consolidated under the deed of trust.

Browne being obligated to reimburse Consolidated, pursuant to the provisions of the deed of trust aforesaid, must bear the expense incurred by Consolidated in defending this action.

The court finds that a reasonable fee for the attorney representing Consolidated in the defense of this action is the sum of $2,000.

Accordingly, a judgment is being entered by the court to carry into effect this decision.

5. 86 So.2d at 465.