Stephen G. ANTHONY, Plaintiff,

v.

The DROVERS NATIONAL BANK OF CHICAGO, Defendant.

Civ. A. No. 75–1482.

United States District Court, D. South Carolina,

Columbia Division.

Nov. 20, 1975.

Daniel A. Speights, Glenn, Porter & Sullivan, Columbia, S. C., for plaintiff.

H. Simmons Tate, Jr., Boyd, Knowlton, Tate & Finlay, Columbia, S. C., for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

HEMPHILL, District Judge.

This is a diversity action brought by a South Carolina resident against a national bank located solely in Chicago, Illinois. The complaint alleges two causes of action: fraudulent misrepresentation and negligence. It is based upon a claim that the plaintiff invested twelve thousand dollars ($12,000.00) in a venture to keep Mexican cattle in Texas for later

shipment to Italy, because the plaintiff thought the defendant bank was to finance the promoters with an irrevocable twenty million dollar ($20,000,000) letter of credit. According to the complaint, the promoters disappeared revealing the venture as a sham.

Prior to answering, defendant moved under Rule 12 to dismiss on the grounds of improper venue and lack of jurisdiction over the person.

The National Bank Act, Title 12 U.S.C. § 21 et seq., has a specific provision governing venue of suits against national banks. Title 12 U.S.C. § 94 provides:

> Actions and proceedings against any [national banking] association . . . may be had in any [federal] district . . . court . . . held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

■ It is well settled that this statute deprives state courts (and therefore federal courts sitting in diversity cases) of jurisdiction of an action against a national bank established or located in another state. The leading case on this point is *Mercantile National Bank v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), which held that a state court of Travis County, Texas, had no jurisdiction over an alleged fraud action against a national bank whose home county was Dallas County, Texas. The Court said, at page 561, 83 S.Ct. at p. 523:

> All of the cases [of] this Court which have touched upon the issue here are in accord with our conclusion that national banks may be sued only in those state courts in the county where the banks are located.

The "command of the federal statute" must not be departed from, the Court said, even though the consequence is that two national banks could not be joined in the same action if they are located in different counties or different federal districts.

Some state courts, including the South Carolina Supreme Court, have recently interpreted § 94 liberally enough to find proper venue in any county in which a national bank has a branch office on the theory that the bank is "located" in every county where it has an office. *Holson v. Gosnell,* S.C., 216 S.E.2d 539 (1975). Federal authority since *Leonardi v. Chase Nat'l Bank,* 81 F.2d 19 (2d Cir. 1936), however, is to the contrary. See *Helco, Inc. v. First Nat'l City Bank,* 470 F.2d 883 (3d Cir. 1972) and cases cited therein. State and federal courts within the same jurisdiction have contradicted each other on this issue. *Compare Reaves v. Bank of America,* 352 F.Supp. 745 (S.D.Cal.1973) *with Central Bank v. Superior Court,* 30 Cal.App.3d 962, 106 Cal.Rptr. 912 (1973). While it is unnecessary to express an opinion as to the validity of this liberal interpretation, the court finds that neither this nor any construction of the actual language of § 94 could broaden it sufficiently to allow the instant action to be brought in South Carolina.

If proper venue is to lie in South Carolina despite § 94, the theory on which plaintiff must rely is that the defendant bank has in some manner waived its protection under that statute. The United States Supreme Court has long recognized that such a waiver may occur by failure to raise an objection to venue at trial. *Charlotte Nat'l Bank v. Morgan,* 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889); *Michigan Nat'l Bank v. Robertson,* 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963). The court is not aware of any federal authority, however, which supports plaintiff's position that a bank's allegedly tortious actions prior to the institution of suit can result in an involuntary waiver of its venue privileges under § 94. Though some state courts have so held, *Northside Iron and Metal Co., Inc. v. Dobson and Johnson, Inc.,* 480 F.2d 798 (5th Cir. 1973) is directly to the contrary, and to allow venue in South Carolina on the basis of the alleged activities

of this defendant within the state would "bend the law too far from the obvious intent of the legislature and render altogether meaningless the Congressional enactment favoring local suits of national banks." *Staley v. Homeland, Inc.,* 368 F.Supp. 1344 (E.D.N.C.1974).

■ Since the defendant in this case is established, located, and has its principal place of business in Chicago, Northern District of Illinois, and since it has not waived and still asserts the venue privilege granted by Title 12 U.S.C. § 94, venue in this court is improper and the case must be dismissed on that ground.

It also appears appropriate, however, to consider the assertion that this court lacks jurisdiction of the defendant bank. The complaint, which alleges the commission of "a tortious act in whole or in part in the State of South Carolina," seeks to establish this court's jurisdiction under South Carolina's long-arm statute, S.C.Code Ann. § 10.2–803. Defendant does not and could not contest the fact that this statute must be viewed as extending South Carolina's long-arm jurisdiction to the limits imposed by the due process clause. *See, e. g., Triplett v. R. M. Wade & Co.,* 261 S.C. 419, 200 S.E.2d 375 (1973).

■ Nevertheless, § 10.2–803 and this court are bound by the traditional concepts of due process which disallow personal jurisdiction absent such minimum contacts between defendant and the forum as to render suit in the forum state inoffensive to traditional notions of fair play and substantial justice. *See, e. g., International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Enlanger Mills v. Cohoes Fibre Mills,* 239 F.2d 502 (4th Cir. 1956); *Duplan Corp. v. Deering Milliken, Inc.,* 331 F.Supp. 703 (D.S.C.1971); *Bass v. Harbor Light Marina, Inc.,* 372 F.Supp. 786 (D.S.C.1974).

■ In this case, there appears to be no contact between the bank and South Carolina justifying jurisdiction over it as defendant. It is true that a substantial portion of the activity which led to plaintiff's ill-fated investment did take place in South Carolina, but the activity was not that of the bank, but of one Ralph Edward Slaughter. The defendant bank had no apparent or alleged connection with Slaughter sufficient to subject it to jurisdiction in South Carolina because of Slaughter's actions here. The complaint does allege that plaintiff was in South Carolina when Slaughter showed him a copy of a Telex message from defendant to Slaughter containing information concerning the supposed transaction and that, on one occasion, plaintiff "personally contacted" defendant's Chicago office and received similar information. There is no allegation of any other contact whatsoever between The Drovers National Bank and the proposed forum in South Carolina, and, while the ever-evolving standards of due process have indeed broadened in recent years, this court is not prepared to conclude that they can be stretched enough to allow jurisdiction on the basis of the negligible contacts alleged here.

Since venue in this action is clearly improper in South Carolina and this court lacks jurisdiction over the single named defendant, there is no alternative but to dismiss the action. Defendant's motion to dismiss is granted.

And it is so ordered.