230 So.2d 580 (1970)
ST. LOUIS FIRE AND MARINE INSURANCE COMPANY
v.
S.W. LEWIS.
No. 45525.
Supreme Court of Mississippi.
January 19, 1970.
Satterfield, Shell, Williams & Buford, K. Hayes Callicutt, Jackson, for appellant.
Scales & Scales, Fred T. Rucker, Jackson, for appellee.
INZER, Justice.
This is an appeal by St. Louis Fire and Marine Insurance Company from a judgment *581 of the Circuit Court of the First Judicial District of Hinds County awarding appellee, S.W. Lewis, the sum of $3,000 for the death of a horse alleged to have been insured by appellant. We affirm as to liability and reverse and remand for another trial on the question of the value of the horse.
The declaration charged, and the proof shows, that on May 10, 1966, appellant insured the life of a horse named Magnolia Dandy owned by appellee. By the terms of the policy issued, it covered the actual cash value of the horse, not to exceed $4,000. In the early part of February 1967, appellee sold Magnolia Dandy and he contacted Mr. Dan Charbonnet, the agent through which he had purchased the policy, and informed him that he had sold Magnolia Dandy and requested that the policy be modified or changed to cover a horse named Kaplan Twist. Mr. Charbonnet advised Mr. Lewis that before the change could be made it was necessary that he make an application requesting the change and to furnish a veterinarian's certificate showing the horse to be in good health. Mr. Lewis complied with the requirements and on Friday, February 17, 1967, Mr. Charbonnet had in his possession the necessary papers. He attempted to call Mr. Chervenak, appellant's general agent in Dallas, Texas, to effect the change but was unable to reach him on that day. On the following Monday morning he did reach Mr. Chervenak, and, according to the testimony of Charbonnet, he advised him of the application and requested that the modification be made, and that Chervenak advised him that it would be done and that the horse was covered as of that time. Mr. Charbonnet then advised Mr. Lewis that the change had been accomplished and that Kaplan Twist was covered by the policy. On February 22, 1967, Kaplan Twist died and on the following day Dr. J.W. Branson, a veterinarian with the Mississippi State Livestock Sanitary Board, performed an autopsy on the horse. The autopsy revealed that the horse had a twisted torsion of the mesentaric attachment of the ileum which resulted in a complete cessation of blood flow. This resulted in a rupture of the stomach and diaphragm. In lay language, Dr. Branson explained that what happened was that the intestinal tract, which is attached to the backbone, had become twisted and the blood vessels which ran into the intestinal tract were twisted and the blood supply cut off. This interfered with the normal digestive process and caused gas to build up in the stomach of the horse to such an extent that the stomach exploded forcing the contents into the lung cavity of the horse, and thus, the diaphragm to explode. Dr. Branson explained that if the horse is not seen by a veterinarian within an hour of the accident causing such twisting, the results would always be fatal.
Mr. Chervenak testified in behalf of appellant and stated that he was the general agent of appellant and as such he had the authority to bind his principal in an oral contract of insurance so as to cover the horse Kaplan Twist, but denied that he ever did so in writing or in the conversation with Mr. Charbonnet. He admitted that Mr. Charbonnet talked to him about making the change, but he denied that he ever told Mr. Charbonnet that the policy was in effect.
Appellant assigns as error the action of the trial court in overruling its demurrer to the declaration. Appellant argues that this is a suit on an insurance contract, and since the policy sued upon and attached as an exhibit shows on its face that it covered a horse named Magnolia Dandy and not the horse sued for, the suit could not be maintained until the policy was reformed to cover the horse Kaplan Twist. We find no merit in this contention for the reason that the allegations of the declaration are sufficient to charge that the policy was modified by a subsequent oral agreement to insure the horse Kaplan Twist. The policy was attached to show the terms of the contract as modified. The fact that the original insurance contract was in writing does not prohibit it *582 from being modified by a subsequent oral agreement. The general rule in this regard is stated in 43 Am.Jur.2d Insurance § 353 (1969) under the title "Modification," to be as follows:
In accordance with the rule prevailing as to contracts generally, the parties to an insurance contract may make such lawful alterations and modifications thereof as they may mutually agree upon. The modification may be in writing, as by an indorsement upon the policy itself or by a new contract, and an insurance company has power after the occurrence of a loss to substitute a corrected policy and render itself liable thereunder for such previous loss. Modification of a policy to include a certain risk may be effected by the detachment of a rider excepting the risk and by an agreement that it shall be covered for the remainder of the policy term.
In a proper case the modification may be by a subsequent oral agreement, since contracts of insurance are no exception to the general rule that in the absence of a law which requires the particular contract involved to be in writing, the parties to a written contract may afterward change or modify it by parol agreement. This is not violative of the parol evidence rule, but is rather a case wherein one simple contract is changed by a subsequent one of equal dignity in contemplation of law. An open policy may be modified by a subsequent parol agreement even though the policy provides that no condition shall be waived except by specific indorsement on the policy. This is true, for example, of an agreement that insurance may be effected by giving notice of shipments after they are made. (43 Am.Jur.2d at 402-403).
An oral contract of insurance is valid in this state. A modification of an existing contract may be done by a subsequent oral agreement provided that such modification can be established by satisfactory evidence. We are of the opinion that appellee could maintain a suit on the contract as modified by the oral agreement without the necessity of having the contract reformed.
Appellant next contends that Mr. Charbonnet was only a soliciting agent and had no authority to bind appellant. It is not contended by appellee that Mr. Charbonnet was the general agent of appellant, but he does contend that Mr. Charbonnet was specifically authorized by its general agent, Mr. Chervenak, to bind appellant in this instance. We are of the opinion that the evidence supports this contention. Mr. Chervenak testified that he was the general agent of appellant and as such he had the authority to modify the policy and that if he had authorized Mr. Charbonnet to tell Mr. Lewis that the policy had been modified to cover the horse in question, his company would be bound thereby. He denied that he authorized Mr. Charbonnet to bind appellant, but we think this was a disputed question of fact for determination by the jury.
Appellant also urges that even though its duly authorized agent made the agreement to modify the policy it was not a valid modification because there was no consideration to support it. The record reflects that there was a sufficient consideration to support the modification. Mr. Chervenak testified that after appellee sold Magnolia Dandy the policy was subject to be terminated and that he was entitled to a refund on the premium which he had paid. The retention of the refund by appellant constituted sufficient consideration to support the modification. So far as the record in this case shows, appellant has never tendered the refund.
We are of the opinion that this case should be affirmed as to liability, but that it must be reversed as to the amount of liability, because of the error in granting the instruction reflected by the record. This instruction reads as follows:
The Court instructs the jury for the plaintiff that if you find for the plaintiff *583 as against the defendant, St. Louis Fire & Marine Insurance Company, the form of your verdict may be:
We the jury find for the plaintiff and assess his damages at $3,000, filling in the blank and writing the same on a separate piece of paper.
This instruction as written tells the jury that, if it finds for the appellee, it should assess damages at $3,000. The evidence relative to the value of the horse in question was conflicting. It ranged from $400 to $10,000. Appellee urges that the instruction as granted by the court and read to the jury left the amount blank and that the figure $3,000 was filled in by someone at a later time. It is well settled that we will not consider statements of facts contained in briefs of counsel, but that we must confine ourselves to the facts as shown by the record. In Canal Insurance Co. v. Howell, 253 Miss. 225, 175 So.2d 517 (1965), this same question was before the Court, and there we said:
Appellee admits that this instruction as it appears in the record is erroneous, but contends that the instruction as presented to the judge and read to the jury did not have the amount filled in, but left a blank space. Much is said in appellee's brief concerning this allegation, but we must determine the correctness of the instruction from the record. If the instruction was not properly copied in the record, or if it had been altered since it was presented to the jury, the necessary steps should have been taken to correct the record before the case was submitted to us. Miss. Code Ann. § 1670 (1956) provides the method to correct such errors. (253 Miss. at 232, 175 So.2d at 520).
Appellant also contends that the trial court erred in overruling its objection to the testimony offered by appellee as to the value of the horse in question. It is doubtful that the witness Brock was properly qualified before he was allowed to express an opinion.
However, the question of the qualification of a witness to give an opinion as to the value of property is for the trial court to determine and its determination that a witness is qualified to give an opinion will not be disturbed unless it clearly appears that the witness was not qualified.
For the reasons stated this case is affirmed as to liability and reversed and remanded for another trial as to the value of the horse in question.
Affirmed as to liability; reversed and remanded on the question of damages only.
GILLESPIE, P.J., and RODGERS, BRADY and ROBERTSON, JJ., concur.