499 So.2d 1354 (1986)
CITY OF MOUND BAYOU
v.
ROY COLLINS CONSTRUCTION CO., INC. and D.D. Freeland Construction Co. d/b/a a Joint Venture.
No. 55841.
Supreme Court of Mississippi.
December 3, 1986.
*1355 Tyree Irving, Walls, Buck & Irving, Greenville, for appellant.
William S. Adams, Gerald H. Jacks, Cleveland, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Roy Collins Construction Company, Inc., and D.D. Freeland Construction Company brought this action against Barrett Engineering, Inc., and the City of Mound Bayou for sum due under contract. The circuit court, Second Judicial District, Bolivar County entered a judgment for the contractors in a bench trial before Hon. Elzy J. Smith. The circuit court awarded the contractors $159,759.14 plus pre-judgment interest for work completed by the contractors to which Mound Bayou appeals. Finding no error, we affirm.

FACTS
The City of Mound Bayou (City) received Federal EDA funds to make street and drainage improvements for the city. The city hired Barrett Engineering, Inc. (Barrett), to prepare plans and oversee the project. Roy Collins Construction Co., Inc., and D.D. Freeland Construction Co. (hereinafter contractors) formed a joint a venture to bid on the project. On April 6, 1977, the city awarded the contract to the joint venture as low bidders. The contractors began work on April 11, 1977.
The contract was divided into sections which provided the contractors with monthly progress payments. In order to get paid the contractors broke down the work into schedule values and prepared pay requests based on the work that they completed to date. Before and after requesting payments, the contractors consulted R.A. Scott, Barrett's resident engineer. Scott inspected the work, kept a daily diary and determined whether the pay request conformed with the completed work. Collins and Freeland of the contractors then signed the application and sent it to Barrett in Memphis for its approval. Palmer Bartlett, project engineer for Barrett, examined the application, determined if it was satisfactory, then certified it for payment and sent it to Mound Bayou.
Until his departure on September 26, 1978, Scott served as Barrett's on-site engineer. Scott testified he worked on all pay requests through Pay Request No. 12. Scott claimed he thoroughly checked all the work the contractors did so as to leave the project with up-to-date records on the state of completion of the project. At the time Scott left, the project was 98.86% complete and the contractors had completed $3,037,411.34 worth of work. All that remained on the contract was clean-up work. The city kept $303,741.13 retainage and paid the contractors $413,196.48, based upon Pay Request No. 12. Upon completion the contractor was to receive the retainage kept by the city.
The contract specifically required that all alterations in construction would be authorized by a written change order signed by the project engineer. Roy Collins testified that despite the requirement, Mayor Lucas asked the contractors to make certain alterations before the engineer wrote a change order. Collins testified that Change Orders Nos. 1, 2 and 3 were forthcoming after the mayor orally requested more work. Collins also stated the contractors completed at least 60% of the extra work before the engineer executed the change order.
*1356 Part of the dispute in this case arose from work performed which the mayor orally requested, but did not pay for. Part of this extra work appeared in change Order No. 4. The parties also disagree as to the final amount due on the original contract.
The parties began to disagree about what was owed after Scott left. After Scott's departure as resident engineer, the contractor submitted Pay Request No. 13 on February 20, 1979, requesting payment of $502,269.99, this included the $303,741.13 retainage. All the work on the contract was complete when the contractors made Pay Request No. 13. At this time the contractors claimed $198,528.86 for work completed between Scott's departure on September 26, 1978 and February 20, 1979. Bartlett altered Pay Request No. 13 without consulting the contractors or adequately checking what was done. His alteration reduced the current payment due by $200,000 and required a continued retainage in the amount of $200,000.
Thereafter the city and Barrett ordered additional work. Some of which appeared on Change Order No. 4. The additional work in Change Order No. 4 included emergency work to repair a water main crossing Lampton Street bridge, installation of 1,400 liner feet of water main on McGiness and Lampton streets, additional piping laid, additional inlets installed, and more concrete streets laid. The contractors submitted Pay Request No. 14 on March 27, 1979, to Barrett for current payments due in the amount of $201,618.65. At that time Barrett did not question the total amount due on Pay Request No. 14, nevertheless he altered Pay Request No. 14 to provide a retainage of $100,000 and a current payment due of $101,613.65. The city failed to pay any of this pay request, telling the contractors instead, if they paved the parking lot at City Hall, installed more pipe around the mayor's house, and paved the street where the pipe had been, the city would finally pay the contractors the amount they claimed was due.
The contractors were anxious to be paid what the city owed them, but before they could be finally paid, Bartlett had to complete a final audit of the job. Barrett failed to prepare the "as-builts," which is essentially an audit of the contractors' work. The contractors hired Murphy, an independent engineer, to prepare the as-builts. The contractors were not paid for this service.
Bartlett reviewed Murphy's as-builts and checked some of Murphy's measurements against some Bartlett compiled. Bartlett admitted he did not check all the work completed, but only made a cursory survey at Mound Bayou.
Instead of paying the contractors on August 6, 1979, Bartlett requested additional information on the extra work the contractors completed. The contractors responded that they had already provided the information on Pay Request 14.
By August, 1979, the contractors claimed $261,000 was due. This amount included the unpaid retainage of $100,000 and the additional work the City had requested, but not paid for. The contractors submitted this claim for payment in Pay Request 14-final on August 8, 1979.
The contractors and A.B. Hicks, president of Barrett, met with Mayor Lucas and the governing board of Mound Bayou on August 8, 1979, in an effort to conclude the dispute. The mayor directed Barrett and the contractors to work out their differences and he would "cut a check" for the amount due the contractors.
The next day Freeland, A.B. Hicks and Palmer Bartlett met in Memphis and arrived at an agreed compromise figure of $249,013.10. At the end of the meeting the parties called Mayor Lucas. During the conversation Bartlett told the mayor that he authorized Mound Bayou to pay $236,000 of the $249,013.10 compromise figure. Bartlett added that the city should pay the balance of the $249,013.10 when Barrett finished the final paperwork and submitted the contractors' last pay request to the city. The mayor of Mound Bayou agreed to comply.
*1357 Bartlett, however, ignored the compromise figure of $249,013.10. On August 24, 1979, Bartlett wrote the City and recommended Mound Bayou pay the contractors $176,203.91 and keep a $20,000 retainage from the $76,203.91. In making this recommendation, Bartlett ignored the as-built audit and relied upon his incomplete check of the job.
Mound Bayou failed to pay the contractors until February 18, 1980, when the city paid the contractors $72,578.47. The city made no further payments on the contract, so the contractors filed suit against Mound Bayou in the circuit court of the 2nd Judicial District of Bolivar County. Originally the contractors claimed Mound Bayou owed them $177,123.10 plus interest. However, in discovery the contractors amended their complaint and claimed the City owed them $159,759.94.
In anticipation of litigation, the contractors employed W.M. Thomas, a duly qualified and licensed engineer. Thomas took the Barrett audit and measured, checked and classified all items subject to measurement which were in dispute by the parties. Mr. Thomas testified that he used all of the contract documents including the as-built drawings of the project as prepared by Murphy, another independent engineer. Murphy's as-builts were prepared prior to additional work being completed. Collins and Freeland testified they made a note of additional work on the as-built drawings. Thomas felt that Barrett's audit was inaccurate and used inappropriate engineering methods. Thomas's audit considered only those items capable of measurement and concluded the completed work reflected a value of $3,246,719.80. The parties stipulated that $3,108,518.67 was paid to the contractors, leaving a balance due, based on Thomas's measured quantities, of $138,201.13. The contractors also presented proof of claims which were not capable of measurement.
Both parties waived trial by jury. The trial judge relied heavily on the testimony of Scott in addition to the testimony of the plaintiff contractors. The only witness that the defendant presented was Bartlett. Bartlett lacked 12 hours from completing his engineering degree at Christian Brothers College in Memphis, Tennessee. He went to work for Barrett in December, 1976, and had five years' experience when his company was hired by the City of Mound Bayou. Mr. Bartlett was on probation for impersonating a licensed engineer based upon a complaint filed in the general sessions criminal court of Memphis, Tennessee. The trial court did not accept Mr. Bartlett's testimony as an expert.
The trial judge awarded the contractors $159,759.94 based on the contract values determined by Mr. Thomas's audit. The trial judge found that Mound Bayou owed the contractors $138,201.13, based upon the Thomas audit. He also found that the contractors had shown that they were due an additional $30,776.67 for work they did which Thomas could not measure. But because the contractors neglected to conform their pleadings to their proof, the judge restricted the award to $159,759.94.

LAW

I.

DID THE TRIAL COURT ERR BY NOT ENFORCING THE EXPRESS TERMS OF THE CONTRACT BECAUSE IT FOUND BARRETT ENGINEERING AND THE CITY OF MOUND BAYOU FAILED TO EXECUTE THEIR CONTRACTUAL DUTIES IN GOOD FAITH?
The rule in our State requires contractual agreements to appear on the minutes of the Board of Aldermen before a city can be charged. J.B. White's Garage, Inc. v. Town of Poplarville, 153 Miss. 683, 121 So. 295 (1929). Here, however, Mound Bayou initiated a written contract with Roy Collins and Freeland Construction Company to complete work in their city. Thus that rule does not apply here. Mound Bayou argues, however, that the contractors are claiming payment for extra work on the contract. The city points to their contract *1358 which requires all change orders to be executed in writing.
Generally, a contractor who proceeds with work without procuring a written change order proceeds at his peril. In Citizens National Bank v. L.L. Glascock, 243 So.2d 67 (Miss. 1971), a contractor asked for more money because the work contemplated under the contract was more difficult and more expensive. The contractor proceeded with a more expensive construction method without written or oral agreement from either the architect or owners. We held that a contractor was not entitled to extra pay for work which was anticipated under the written contract. Id. at 70.
In Delta Construction Co. of Jackson v. City of Jackson, 198 So.2d 592 (Miss. 1967), a contractor again sought more money for what he claimed was extra work. In that case the contractor argued that the City of Jackson was estopped from relying on a requirement for written change orders where the city induces the contractor to act and accepts the benefit for the additional work. We did not accept the contractors' argument because the contractors failed to act in good faith, the engineers were not authorized to approve the additional work claimed, and the city did not approved the extra work. Id. at 599-600. We added that:
The contract in the instant case requiring supplemental agreement for extra work over minor changes is essential, because municipalities and other governmental agencies obtained funds with which to build public improvements from bond issues based upon estimates furnished to them, and municipalities must reserve the right to stop a project if they determine the work will exceed the amount of money allocated to any given phase of the project. [Emphasis added]
Id. See also: Ott & Mockbee, Mississippi Construction Law (1981).
Today we do not depart from this rule. A contractor should secure a written change order before beginning additional construction work.
We have recognized that there are circumstances in which the contractor should recover for additional work, even where the contract requires a change to be executed in writing. Baum & Co. v. Covert, 62 Miss. 113 (Miss. 1884), concerned a contract to erect a large building which contained a special provision which required change orders signed by the architect and owner before the contractor began the additional work. The owners gave verbal commands to do extra work outside the contract. The owners stressed that they made no change orders in writing. The Court affirmed the jury's award to the contractor for his additional work:
This suit was not for recovery of the price of any work whatever authorized by the contract. It was expressly brought for those things which lay outside of and beyond it. The written contract, therefore, in no manner controls the rights of the parties except for showing what things were covered by the contract price... . Notwithstanding their stipulations to the contrary the owners must pay a reasonable value for everything furnished by their order if it be clearly established to the satisfaction of the jury that such things were ordered by them. The burden of so proving is, of course, upon the plaintiff and must be clearly established by him.
Id. at 120.
In the case of Leggett v. Vinson, 155 Miss. 411, 422, 124 So. 472, 475 (1929), the Court said:
It is undoubtedly true that the parties to a contract may modify it, or waive their right under it, and engraft new terms upon it, and in such case the promise of one party will be sufficient consideration for the promise of another. Id.

This proposition is supported in a number of jurisdictions, where:
It has been held that the contractor was entitled to recover for alterations or extras notwithstanding compliance with a stipulation requiring a written order, where it appeared that work was orally *1359 ordered, requested, directed, authorized or consented by the owner or his duly authorized agent.
2 A.L.R.3rd 620, 661 (1965).
Such a waiver is valid in the absence of such statutory authority. Id. at 620.
When Mound Bayou contracted with Collins and Freeland, they agreed to pay for all of the specified work. To ensure the contractors completed the work properly, Mound Bayou hired Barrett Engineering to approve payments. Barrett Engineering had a duty to act in good faith before it denied payment to the contractors.
Professor Corbin included an enlightening section on this subject in his treatise on contracts:
Under some circumstances, all courts will refuse to give effect to an express provision making the expert's certification a condition precedent to the duty to pay compensation. If the expert's refusal of his certificate is not "in good faith," his certificate will be eliminated as a condition, and the promise of compensation becomes enforceable without it. I'll agree that it is eliminated if its refusal is a result of the fraudulent collusion of the expert and the employing owner. Fraud and bad faith will be found to exist if the expert fails and refuses to make an examination of the performance by the contractor. Refusal of the certificate because of conscious or an neglectful ignorance of the facts may not be as an intentional misrepresentation of the facts known to exist; but it is bad enough to induce the courts to compel payment in the absence of a certificate. The owner must pay even though he did not act in collusion with the expert and had no part in the causing the refusal of the certificate; it is enough that the expert himself acted in bad faith. The expert must express an honest judgment after a fair consideration of the facts in issue. [Emphasis added]
Corbin, Corbin on Contracts (1952  1 vol. ed.), § 651, p. 618-619.
This Court agreed with the above principles in Standard Construction Co. v. Brantley Granite Co., 90 Miss. 16, 43 So. 300 (1907), when it held that a contractual provision requiring the satisfaction of an architect would be enforced "in the absence of fraud or such gross mistake as would necessarily imply bad faith or failure to exercise an honest judgment ...", citing Sweeney v. United States, 109 U.S. 618, 3 S.Ct. 344, 27 L.Ed. 1053 (1883). Mound Bayou cannot rely on technical requirements in the contract, when both Mound Bayou and their agent Barrett failed to perform their contractual obligations in good faith.
One of the most important duties of an engineer/architect is to inspect the work to insure it is fully performed by the contractor. State, for Use of National Surety Corp. v. Malvaney, et al, 221 Miss. 190, 209, 72 So.2d 424 (1954). In fact an engineer/architect will be liable if he improperly releases funds to a contractor without adequately inspecting the construction site. Newton Investment Co., Inc. v. Barnard & Burk, Inc., 220 So.2d 822, 824 (Miss. 1969). In Newton a dispute arose between the contractor, the engineer and the owner over the price of sewage piping. The owner was anxious to get the job done, so he agreed to pay the contractor's price. Later he denied making any agreement and tried to sue the engineer for his payment based on the contractor's price. We held that the owner waived his rights under the contract by his conduct of not enforcing the provision in the contract and was estopped from asserting non-compliance of the original terms. Id. at 824.
We give deference to the duty of the engineer to protect the owner. Malvaney, supra. But the owner's and engineer's rights are not absolute. They must act in good faith. Corbin, supra.
Barrett Engineering's acts and omissions constitute a gross error and a failure to act in good faith, in that,

*1360 (1) Barrett Engineering ignored the audit of their on-site engineer of work completed by the contractor without any evidence that his figures were improper.
(2) Barrett Engineering altered pay requests without proof that the contractors had not completed the work indicated in the request.
(3) Barrett Engineering failed to provide an on-site engineer to check the contractors' progress after Scott left.
(4) Barrett Engineering failed to prepare the "as-builts" to properly audit the project after its completion.
(5) When Barrett Engineering finally completed an audit, they could not assure the accuracy of their figures.
(6) An independent engineer, Thomas, found that Barrett used improper engineering methods to complete their audit. Thomas also found that based on the prepared as-builts that the contractors were due $138,201.13.
The trial judge properly imputed the acts and omissions of Barrett Engineering to the City of Mound Bayou, Mound Bayou having employed Barrett to serve as its agent to perform the city's contractual duties.
Barrett Engineering and Mound Bayou also failed to act in good faith when they failed to act fairly and cooperate with the contractors. We base this finding upon the following findings of fact:
(1) Barrett Engineering changed two of the contractors' pay requests without consulting the contractors.
(2) Barrett Engineering and the City ignored the August 8, 1979, compromise payment of $249,013.
(3) Mound Bayou paid the contractors "an off-the-wall figure" of $72,578.47, which was even less than Barrett's last recommended payment.
(4) Barrett Engineering failed to properly audit the project.
(5) Barrett Engineering and the City provided no adequate explanation for their failure to pay their contractors.
Our holding mirrors what every first year law student learns is necessary for a finding of breach of duty of good faith on the part of an engineer/architect. To conclude otherwise would allow an architect/engineer and an owner to act with impunity regardless of the consequences to the contractors. The contractors should recover in the instant case because Barrett and Mound Bayou by a persistent pattern of conduct waived the contractual provision requiring changes to be executed in writing, and moreover Barrett and Mound Bayou failed to act in good faith in performing their contractual obligations.

II.

DID THE TRIAL COURT ERR BY NOT ALLOWING PALMER BARTLETT TO GIVE OPINION TESTIMONY AS A SKILLED OR EXPERT WITNESS?
We have held in numerous cases that formal education is not the only means of becoming an expert in a field. "A witness may qualify to give an expert opinion through his experience." Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss. 1984). See also, Merritt v. Dueitt, 455 So.2d 792 (Miss. 1984); Early Gary, Inc. v. Walters, 294 So.2d 181 (Miss. 1974). But the trial judge must determine:
Whether the proffered witness has obtained the required degree of specialized knowledge within a particular field ... and unless there is an abuse of that discretion, his determination will not be disturbed on appeal.
Early Gary, Inc. v. Walters, supra.
On voir dire the defendant's expert, Palmer Bartlett, admitted that he lacked 12 hours from completing an engineering degree, had but five years' practical experience at the time of the contract, and was on probation at the time of trial for impersonating an engineer. After a damaging voir dire, the defendant attorney offered Mr. Bartlett's testimony as a *1361 skilled witness as opposed to an expert witness. The trial judge continually reminded defense counsel that since the court was trying the case from the bench, the trial judge was the trier of facts. A trial judge has broad discretion in admitting expert testimony, but as the trier of fact he also weighs the credibility of Bartlett's testimony. The trial court did not abuse its discretion or commit reversible error by refusing to allow Bartlett to testify as an expert.

III.

DID THE TRIAL JUDGE ERR IN AWARDING INTEREST AGAINST THE CITY OF MOUND BAYOU?
The trial judge awarded the contractors prejudgment interest from the date Barrett Engineering officially accepted the project on August 16, 1979, to the date of trial which commenced on January 16, 1984. The trial judge cited Town of Senatobia v. Ryan, 106 Miss. 357, 63 So. 680 (1913), in which a contractor was allowed interest on a verdict in an action for the amount due from a municipality for street repairing. The circuit judge also cited State Highway Commission v. Wunderlich, 194 Miss. 119, 122-123, 11 So.2d 437 (1943), which held that the State Highway Commission acted as a corporation when it entered a contract, thus was liable on claims for unliquidated damages for a breach of contract. The subsequent decision of City of Jackson v. Reed, a minor, 233 Miss. 280, 307, 102 So.2d 342 (1958), recognized that a municipality was liable for prejudgment interest, but not liable for interest on a judgment or decree against it. Due to the aforementioned authorities, the lower court was correct when he awarded prejudgment interest from the day the contract was accepted by Barrett until the trial date. In the future, however, courts must look to Miss. Code Ann. § 31-5-25 (Supp. 1985), which enables contractors to receive interest on past due contract payments. Since this action arose before this statute became effective, it does not apply here.
In their brief and in oral argument, Mound Bayou attempted to show how Collins and Freeland juggled figures to make it appear they were owed more than they were actually due. No such attempt was made to prove this during the six-day trial below. The appellant failed to bring this out in the testimony of their only witness, Palmer Bartlett. As this Court sits in appellate review, such an argument is inappropriate.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.