In re Stanley **LEVINGSTON** and Sylvia Tindall Levingston (Scott), Debtors.

**Bankruptcy No. 86–00712–BRC–GRE.**

United States Bankruptcy Court, N.D. Mississippi.

Aug. 6, 1990.

P.J. Townsend, Jr., Drew, Miss., for Sylvia Tindall Levingston.

William S. Adams, Jr., Jacks, Adams and Chesterfield, Cleveland, Miss., for Roy Collins Const. Co., Inc.

Alex B. Gates, Sumner, Miss., Trustee.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the Court is the objection filed by the debtor, Sylvia Tindall Levingston (Scott), to the claim of Roy Collins Construction Company, Inc., hereinafter referred to as Collins; response to said objection having been filed by Collins; and the Court having heard and considered same, hereby finds, orders, and adjudicates as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### II.

### FINDINGS OF FACT

On April 12, 1984, an AIA Standard Form of Agreement between Owner and Contractor (Collins' Exhibit No. 1) was executed by Sylvia Branum, as owner, and Roy Collins Construction Company, Inc., as contractor. Sylvia Branum is one and the same person as Sylvia Tindall Levingston (Scott). This contract called for the con-

struction of a residential dwelling which was to commence on April 16, 1984, and which was to be completed in 365 days. The contract price was the sum of $196,000.00, which included a fee of $5,700.00 for design and drafting.

In Article 7 of the contract there were limitations on the work to be performed, as well as, allowances for certain features of the construction. The pertinent paragraphs are set forth as follows:

5. Allowances as follows: Brick 220.00/M.
   Lighting Fixtures $500.00 total.
   Plumbing Fixtures $2,000.00 total materials.
   Hardware $1,000.00 total materials.
   Wood paneling $3,000.00 total materials.
   Board & Batten $1,400.00 total materials.
   Hardwood floors $2,400.00 total materials.
6. No appliances included.
7. No interior shutters included.
8. No site work included.
9. No driveway included.
10. Glass in cabinet doors by Owner.

---

The contract documents included the AIA General Conditions of the Contract for Construction. (Collins' Exhibit No. 2) Article 12 of this document set forth conditions to be observed when modifications in the work occurred. Essentially, the contract required that changes would be documented by a written change order. Paragraph 12.1.3 provided how the cost or credit to the owner, resulting from a change in the work, would be determined.

### III.

On August 9, 1984, Sylvia Branum executed a deed of trust in favor of First National Bank of Bolivar County, in the original principal sum of $180,000.00, which was due on demand or by August 30, 1985. (Debtor's Exhibit No. 4) This deed of trust, which apparently evidenced a construction loan, encumbered the property subject to the aforementioned contract.

On August 29, 1984, Sylvia Branum married Stanley Levingston, the President of First National Bank of Boliver County. On April 14, 1985, she executed a warranty deed to herself and Stanley Levingston, as tenants by the entirety with full rights of survivorship, conveying the property upon which the residential dwelling was being

constructed. (Debtor's Exhibit No. 2) On June 25, 1985, the Levingstons executed a promissory note and deed of trust in favor of Planters Bank and Trust Company in the principal sum of $200,000.00, due on June 25, 1986, with interest to be paid monthly. (Debtor's Exhibit No. 3)

The parties have stipulated that the Levingstons moved into the subject residence in May, 1985.

On May 12, 1986, they filed their voluntary joint Chapter 11 bankruptcy petition.

Stanley Levingston was killed in an automobile accident on November 20, 1986.

### IV.

In August, 1987, as a part of a motion to dismiss Sylvia Levingston's bankruptcy case, Collins filed a proof of claim seeking recovery of the balance allegedly due under the contract in the sum of $66,697.94. Mrs. Levingston vigorously objected to this claim asserting that there is no balance owing. It is uncontradicted that the Collins claim arises exclusively from changes in or additions to the original contract. A summary of the changes or additions reveals the following information: (Collins' Exhibit No. 3)

Additional items on Request for Payment No. 1,
dated September 24, 1984, which were paid by
Mr. or Mrs. Levingston ........................... $ 27,935.00

Additional items on Request for Payment No. 2,
dated November 2, 1984, which were paid by
Mr. or Mrs. Levingston ........................... 16,835.00

Additional items on Request for Payment No. 3,
dated December 12, 1984, which were paid by
Mr. or Mrs. Levingston ........................... 6,935.30

Additional items on Request for Payment No. 6,
dated May 15, 1985, which were paid by Mr. or
Mrs. Levingston ..................................... 9,612.00

Total of additional items paid ........................ $ 61,317.30

Additional items not paid for by
Mr. or Mrs. Levingston ........................... 55,118.94

Total of all additional items ......................... $116,436.24

Original Contract Price ................................ $196,000.00

Revised Contract Price ................................ $312,436.24

Total amount paid ..................................... $245,738.30

Balance of contract allegedly due .................... $ 66,697.94

Collins introduced supporting documentation to corroborate the aforementioned summary. (Collins' Exhibits No. 4—22)

Also introduced were the contractor's applications for payment. These are summarized as follows:

Request for Payment No. 1, dated September 24, 1984
(Collins' Exhibit No. 23)

| | |
|---|---|
| Original contract sum | $196,000.00 |
| Net change by change orders | 27,944.00 |
| Contract sum to date | 223,944.00 |
| Application for payment | 73,283.00 |
| Total completed | 73,283.00 |
| Balance to finish | 150,661.00 |

Request for Payment No. 2, dated November 2, 1984
(Collins' Exhibit No. 24)

| | |
|---|---|
| Original contract sum | $196,000.00 |
| Net change by change orders | 44,779.00 |
| Contract sum to date | 240,779.00 |
| Application for payment | 44,165.00 |
| Total completed | 117,448.00 |
| Balance to finish | 123,331.00 |

Request for Payment No. 3, dated December 12, 1984
(Collins' Exhibit No. 25)

| | |
|---|---|
| Original contract sum | $196,000.00 |
| Net change by change orders | 51,714.30 |
| Contract sum to date | 247,714.30 |
| Application for payment | 45,510.30 |
| Total completed | 162,958.30 |
| Balance to finish | 84,756.00 |

Request for Payment No. 4, dated February 8, 1985
(Collins' Exhibit No. 26)

| | |
|---|---|
| Original contract sum | $196,000.00 |
| Net change by change orders | 51,714.30 |
| Contract sum to date | 247,714.30 |
| Application for payment | 40,225.00 |
| Total completed | 203,183.30 |
| Balance to finish | 44,531.00 |

Request for Payment No. 5, dated March 25, 1985
(Collins' Exhibit No. 27)

| | |
|---|---|
| Original contract sum | $196,000.00 |
| Net change by change orders | 51,714.30 |
| Contract sum to date | 247,714.30 |
| Application for payment | 15,685.00 |
| Total completed | 218,868.30 |
| Balance to finish | 28,846.00 |

Request for Payment No. 6, dated May 15, 1985
(Collins' Exhibit No. 28)

| | |
|---|---|
| Original contract sum | $196,000.00 |
| Net change by change orders | 62,392.74 |
| Contract sum to date | 258,392.74 |
| Application for payment | 58,621.44 |
| Total completed | 246,804.74 |
| Balance to finish | 11,588.00 |

In his testimony Roy Collins, the president of Roy Collins Construction Company, Inc., indicated that Request for Payment No. 6 was paid on May 30, 1985, and, as such, the aggregate of all payments made by Mr. and Mrs. Levingston totaled $245,738.30. This can be compared to the value of the total completed work, effective the date of Request for Payment No. 6, in the sum of $246,804.74, less an interest charge of $1,066.44, which Mr. Collins agreed to drop. ($246,804.74 − $1,066.44 = $245,738.30)

Collins informed that his company's claim is based on the extra items added subsequent to Request for Payment No. 6, plus the balance of the original contract work which he says was completed. Although the total amount claimed does not compare precisely with the figures reflected on the exhibits, it is reasonably close, to-wit:

| | |
|---|---|
| Total claimed (Collins' Exhibit No. 3) | $66,697.94 |
| Total of unpaid extra items (Collins' Exhibit No. 3) | 55,118.94 |
| Balance to finish original contract (Collins' Exhibit No. 28) | 11,588.00 |
| Total | $66,706.94 |

V.

There was a sharp dispute in the testimony as to who had requested the additions to the original contract. Mrs. Levingston has taken the position that the additions were undertaken at the exclusive direction of her husband. Collins indicated that the requests came from both Mr. and Mrs. Levingston.

Mrs. Levingston admits that subsequent to her marriage to Mr. Levingston that she was on the construction site at least two or three times per week, and that she was

fully aware that the construction project was being enhanced by the additions.

The additions do not appear to be included as a part of the original contract. As noted above, Article 7, Paragraph 5, set forth certain allowances which were clearly exceeded according to the invoices introduced. In the same article, site work and a driveway were specifically excluded. The cost of these two items is a significant portion of the balance allegedly owing. Coincidentally, the Levingstons willingly paid for additions totaling $61,317.30, which were set forth in Requests for Payment Nos. 1, 2, 3, and 6. (Collins' Exhibit No. 3)

It is interesting to observe that although interior shutters and appliances were excluded from the original contract, they were added on June 13, 1984, prior to the date that Mr. and Mrs. Levingston were married. On that date, approximately $22,179.00 was charged to Ms. Sylvia Branum. (Collins' Exhibit No. 5)

The Court observes that Mrs. Levingston signed several of the invoices which are applicable to the additions, and picked up lighting fixtures from a supplier's place of business. These events occurred in June, 1985, which was subsequent to the last payment made by the Levingstons. (Collins' Exhibits No. 16 and 17)

The Court is of the opinion that both Mr. and Mrs. Levingston had ample involvement in requesting and selecting the additional items that were not included in the original contract.

### VI.

The Court notes from the exhibits that work was being performed at the residence until at least August 12, 1985, the date of the installation of the outside lighting. (Collins' Exhibits No. 12, 13, 14, 16, 17, 18, and 19) Although Mrs. Levingston testified that the Collins employees did not perform any work inside the residence after June, 1985, from the dates on several invoices, it appears that certain work had to be performed inside after this time, particularly in the installation of electrical fixtures.

As to whether the payment made by the Levingstons on May 30, 1985, was a "final" payment, the Court sees that Request for Payment No. 6 reflects that $11,588.00 was still required to finish the original contract. This is indicative that this request for payment was not intended to represent a "final" request.

Collins admitted that he did not approach either Mr. or Mrs. Levingston about the balance owing under the contract until on or about October 7, 1986, when he discussed the amount due with Stanley Levingston. He did not send a final bill to Mrs. Levingston until December, 1986, the month after Mr. Levingston was killed. Collins stated that he did not press the issue of payment because of several reasons: substantial payment toward the total contract had already been made; he had no knowledge that Mrs. Levingston had filed bankruptcy along with her husband; he received repeated assurances of eventual payment from Mr. Levingston; and it took a considerable amount of time to accumulate all the invoices to complete the final billing.

Collins testified that he was always looking to Sylvia Levingston for payment of the contract balance. The Court seriously questions the credibility of this statement for the following reasons: (a) Collins was closely associated with Stanley Levingston through their relationship at the First National Bank of Bolivar County; Stanley Levingston was president of this bank; both he and Mr. Collins were members of the Board of Directors; (b) Stanley Levingston, at the time of the execution of the construction contract, would have appeared to be a man of substantial financial means, quite capable of paying Collins for this project; and (c) there was no testimony or evidence introduced to convince this Court that Sylvia Levingston, then Sylvia Branum, had the financial means to fund a construction project in the sum of $196,000.00; Collins acknowledged that he had obtained no financial information from her whatsoever.

This Court is not so naive as to believe that an astute businessman such as Mr. Collins, on behalf of his company, would enter into a contract of this magnitude

relying exclusively on the financial abilities of Sylvia Branum. It is quite clear that Collins was primarily looking to Stanley Levingston to meet the contract obligations. This, however, does not excuse Mrs. Levingston from liability because she did, in fact, execute the contract document and actively participated in its consumation.

## VII.

### DISCUSSION OF LEGAL ISSUES

In her objection to the Collins claim, Mrs. Levingston frames her pleading in the following fashion:

"3. The claim of Roy Collins Construction Company, Inc., in the sum of $66,697.94, should be disallowed, upon the following grounds: (1) The debtor, Sylvia Tindall (Levingston) Scott is not justly and truly indebted to said creditor, and/or (2) Said claim was fully paid by this Debtor upon completion of the house constructed by Roy Collins Construction Company, Inc., on Lot 38, Golding Acres Second Subdivision, as shown on the map or plat of said subdivision of record in Map Book 7, at page 10, in the Office of the Chancery Clerk of Washington County, at Greenville, Mississippi, and/or said claim is barred by the statute of limitations and/or the statute of frauds, and is otherwise is not justly due and owing from this Debtor to said creditor and/or alternatively, Roy Collins Construction Company, Inc., failed to properly file its proof of claim pursuant to the Bankruptcy Code and the Bankruptcy Rule, and said claim is otherwise, not justly due and owing from the Debtor to said creditor."

■ The first issue that must be addressed is whether Collins timely filed its proof of claim. It is undisputed that the Levingstons did not list Collins as a creditor in their schedules, perhaps, because they were not aware that Collins would be asserting a claim against them. Ordinarily, a claim that is not properly scheduled is nondischargeable pursuant to 11 U.S.C. § 523(a)(3). However, in this case, Collins did have constructive notice of the bankruptcy and filed its proof of claim in August, 1987.

■ Although the filing of the proof of claim is untimely, as set forth in the original notice to creditors, the tardiness is excusable, principally because Collins was not scheduled as a creditor and afforded notice of the deadline to file a proof of claim. The administration of the bankruptcy estate has not been prejudiced in any way by the date of the filing, and the timeliness of the filing has not adversely impaired the consideration of the merits of the claim. As such, the Court is of the opinion that the objection to the Collins claim relating to the timeliness of its filing is not well taken and is hereby overruled.

## VIII.

■ The second issue deals with the application of the statute of frauds. Section 75–2–201, Miss.Code Ann. (1972) provides as follows:

§ 75–2–201. Formal requirements; statute of frauds.

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2–606) [§ 75–2–606].

Mrs. Levingston takes the position that the changes in the construction contract primarily involved the sale of goods, rather than the performance of services, and that since the amounts of the additions exceeded the sum of $500.00, that all of them should have been evidenced by written agreements. This part of the objection is somewhat related to the acquiescence and waiver issue which will be discussed below. Without question, there was a written contract initiating this project. There also were numerous changes in the performance of the contract which were not supported by written change orders. A number of the changes did involve the acquisition of goods for installation in the residence. However, they were all related to the overall construction project which was conceived by the original contract. This Court cannot reconcile the construction of a residential dwelling with merely the sale of goods. The relationship between Collins and the Levingstons was that of contractor to owners, not seller to buyers. As such, this type arrangement does not fall within the ambit of the Mississippi Uniform Commercial Code Statute of Frauds which is applicable to sales transactions. The case of *Anderson Construction Company, Inc. v. Lyon Metal Products, Inc.*, 370 So.2d 935 (Miss.1979), which was heavily relied upon by Mrs. Levingston, is factually distinguishable from the instant proceeding. That part of the objection, based on the statute of frauds, is not well taken and is hereby overruled.

## IX.

The third issue is who is responsible for the balance alleged to be owing to Collins ... Mr. Levingston, Mrs. Levingston, neither, or both. It is not contradicted that as of May 30, 1985, the value of $11,588.00 remained to be performed under the original contract. Since it is also not disputed that the job was ultimately completed, Mrs. Levingston would be clearly responsible for at least this amount.

The unpaid balance of the Collins' claim in the sum of $55,118.94 results from additions which were not documented by written change orders. The testimony and documentary evidence convinces this Court that both Stanley Levingston and Sylvia Levingston jointly orchestrated the additional work. Although the Court is of the opinion that Collins was primarily looking to Stanley Levingston to satisfy any obligations incurred in connection with the project, Mrs. Levingston executed the contract which initiated the project and participated significantly thereafter.

The parties have posed the theory that Stanley Levingston was acting as the agent for Mrs. Levingston, and to the contrary that Mrs. Levingston was acting as an agent for Stanley Levingston. The Court is of the opinion that these arguments are irrelevant. The evidence clearly indicates that Mr. Levingston was a principal party to a verbal contract with Collins for the additional work performed. The evidence also clearly indicates that Mrs. Levingston was a principal party to the written construction contract, as well as, a principal party to a verbal contract with Collins for the additional work performed.

## X.

A fourth issue is whether the express terms of the contract requiring written change orders were waived by the

course of conduct of the parties. The Court has exhaustively reviewed the factual circumstances that are relevant to the actions of the parties in consummating the original contract and the additions thereto. Some of the more pertinent activities, which convince this Court that the provision requiring written change orders was waived, are summarized as follows:

1. Additions totalling $61,317.30, set forth on Requests for Payment Nos. 1, 2, 3, and 6 were paid by the Levingstons.

2. Changes to the contract totalling $22,179.00, occurred on or about June 13, 1984, a date prior to the marriage of the Levingstons, and were billed to Sylvia Branum.

3. Mrs. Levingston executed invoices and secured fixtures from suppliers after May 30, 1985, the date that the Levingstons issued their last check in payment of Request for Payment No. 6.

4. Collins continued to perform work at the residence until at least August 12, 1984, which was approximately two and one-half months after the Levingstons made their last payment.

5. The extra work performed by Collins was patently obvious to both Mr. and Mrs. Levingston. The invoices provide clear evidence that the contract allowances were exceeded for lighting fixtures, plumbing fixtures, hardware, and paneling. It should have been equally obvious to both Mr. and Mrs. Levingston that Collins was installing a driveway and performing substantial site work, neither of which were included in the original contract.

6. A pattern of conduct of modifying the original contract without the benefit of written change orders began, according to the exhibits, as early as June, 1984, and continued into August, 1985. This pattern of conduct, therefore, was not of short duration, but was ongoing practically the entire time that Collins was at the project site. The written terms of the contract were repeatedly disregarded.

A general statement of the law concerning the waiver of a written stipulation in a contract is found in 13 Am.Jur.2d Building and Construction Contracts, § 24, which is set forth as follows:

> A waiver of such stipulation by the owner is the theory on which it is most frequently avoided. Among the acts or conduct amounting to waiver are the owner's knowledge of, agreement to, or acquiescence in, such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance on that promise. (Footnote omitted.)

An early Mississippi case, *Baum & Co. v. Covert*, 62 Miss. 113 (1884), involved a scenario very closely related to that now before this Court. There the contractor and the owner had entered into a written contract for the construction of a building which contained a stipulation that no extra work of any kind would be permitted or paid for unless specifically authorized by a written agreement. The Mississippi Supreme Court held as follows:

> Notwithstanding a previous agreement that there should be no extras or outside work, save upon an express agreement in writing previously made, it was entirely competent for the parties in interest to contract verbally for whatever they mutually thereafter desired. Both parties being sui juris, they could nullify their previous agreement at pleasure.... Such stipulations, though written, may be altered or rescinded by parole, and it may be inferred sometimes that this has been done, from the acts of the parties.

*Id.* at 118 and 119.

> Notwithstanding their stipulations to the contrary, the owners must pay a reasonable value for everything furnished by their order if it be clearly established to the satisfaction of the jury that such things were ordered by them. The burden of so proving is, of course, upon the plaintiff and must be clearly established by him.

*Id.* at 120.

The Court indicated that a suit such as the one before this Court could turn on the theory of quantum meruit.

A second case, coincidentally involving the claimant herein, is styled *City of Mound Bayou v. Roy Collins Const. Co.*, 499 So.2d 1354, 1358–1359 (Miss.1986). Like *Covert*, which was cited with approval, the contractor had proceeded with extra work without the benefit of a written change order although one was expressly required by the terms of the contract. The Court stated as follows:

> We have recognized that there are circumstances in which the contractor should recover for additional work, even where the contract requires a change to be executed in writing. *Baum & Co. v. Covert*, 62 Miss. 113 (Miss.1884), concerned a contract to erect a large building which contained a special provision which required change orders signed by the architect and owner before the contractor began the additional work. The owners gave verbal commands to do extra work outside the contract. The owners stressed that they made no change orders in writing. The Court affirmed the jury's award to the contractor for his additional work....

> In the case of *Leggett v. Vinson*, 155 Miss. 411, 422, 124 So. 472, 475 (1929), the Court said:

> > It is undoubtedly true that the parties to a contract may modify it, or waive their right under it, and engraft new terms upon it, and in such case the promise of one party will be sufficient consideration for the promise of another. *Id.*

> This proposition is supported in a number of jurisdictions, where:

> > It has been held that the contractor was entitled to recover for alterations or extras notwithstanding compliance with a stipulation requiring a written order, where it appeared that work was orally ordered, requested, directed, authorized or consented by the owner or his duly authorized agent. 2 A.L.R.3rd 620, 661 (1965).

The most recent Mississippi decision dealing with this issue is *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582, 584 (Miss.1988), a case which again is fac-

tually similar to the proceeding *sub judice*. There the contractor had filed a complaint seeking payment for extra work performed which had not been authorized by a written agreement. The Court stated the following:

> It is not contradicted that the contract in this case provided that its terms could be modified only by written expression of the parties. Obviously, the chancellor and appellee have overlooked or ignored the rule that a written contract can be orally modified. *St. Louis Fire & Marine Ins. Co. v. Lewis*, 230 So.2d 580 (Miss.1970); *Commercial Credit Corp. v. Long*, 225 Miss. 164, 82 So.2d 847 (1955); *Pritchard v. Hall*, 175 Miss. 588, 167 So. 629 (1936); *McDonnell Constr. Co. v. Delta & Pine Land Co.*, 163 Miss. 646, 141 So. 757 (1932); 15 Williston *Law of Contracts* § 1828, p. 493 (3d ed.1961). An oral modification may be made even where the contract provides that modification must be in writing. *City of Mound Bayou v. Roy Collins Constr.*, 499 So.2d 1354 (Miss.1986); *New York Life Ins. v. O'Dom*, 100 Miss. 219, 56 So. 379 (1911); *Baum v. Covert*, 62 Miss. 113 (1884); 15 Williston *Id.*, at 496. Therefore, the chancellor erred in holding that the written contract could not be orally modified, i.e., "they did it at their peril."

> The question remaining is whether or not the parties waived the stipulation that all modifications be in writing. This question must be determined upon the facts and upon the parties' pattern of conduct. In *City of Mound Bayou, supra*, it was held that the contractor was entitled to compensation for additional work, even though it failed to secure written modification as required by the contract, since the contractor performed the additional work in good faith and the City had not acted in good faith when it requested such additional work. 13 Am.Jur.2d *Building and Construction Contracts* § 24, p. 27 (1964), states the following:

> > Among the acts or conduct amounting to waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stip-

944

ulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance on that promise.

For the above and foregoing reasons, the Court is firmly convinced that the Levingstons waived the protective requirement in the original contract that any and all change orders must be in writing. They ordered the extra work, observed with full knowledge that the additional items were being incorporated into the project, and, as such, acquiesced that they would be responsible for the payment therefor.

## XI.

Lastly, Mrs. Levingston asserts that Collins failed to prove that the parties entered into a contract for a specified amount to be paid for the extra work and alterations. This theory was not raised in her objection to the Collins' claim, nor was it raised during the hearing on her objection. It has been finally brought to the attention of the Court in her post-trial memorandum. Frankly speaking, the Court was surprised that this issue was not vigorously litigated.

As set forth in Mrs. Levingston's memorandum, the standard for recovery can be found in 13 Am.Jur.2d, Building and Construction Contracts, § 24, to-wit:

On the contrary, a number of cases hold that the contractor can recover for work orally ordered or directed by the owner notwithstanding the noncompliance with a stipulation requiring a written order for such work. Under the latter view, for extra work performed by the contractor upon the owner's oral promise to pay therefor, under a contract requiring a written order for such work, the contractor is held to be entitled to recover a reasonable sum, where the price is not fixed.

The Court recalls that Mr. Collins testified that the modifications and additions to the contract were verbally agreed upon on a fixed price or a cost-plus-twenty-percent basis. The summary of the additions (Collins' Exhibit No. 3) and the supporting invoices (Collins' Exhibits No. 4–22) substantiate the value of these charges, as well as,

that they were not included in the original contract. The reasonableness of the charges was not seriously questioned. Prior to and even during the hearing, Collins was not put on notice that this was a disputed issue.

The Court was concerned about perceived inconsistencies in the Collins' invoices. On certain invoices, the cost-plus-twenty-percent basis is clearly reflected. (Collins' Exhibits No. 10, 11, 12, 13, 16, 17, 18, 19, 20, and 22) However, on the remainder of the exhibits, some of which evidence similar services as those invoices reflecting cost-plus-twenty-percent, there is only a fixed price billing. There is no evidence, however, that this is somehow inconsistent with the agreement reached between Collins and the Levingstons. Therefore, in the absence of proof to the contrary, the Court must accept the testimony of Collins that the additional items were performed at either the cost-plus-twenty-percent basis or at a negotiated fixed price, as well as, that these charges are reasonable. The Court does not understand why Mrs. Levingston waited so long to raise this issue, but now it is clearly untimely.

## XII.

The most perplexing aspect of the Collins claim was candidly admitted by Mr. Collins. He indicated that although he had received no payment from the Levingstons since May 30, 1985, he waited until October, 1986, before making any requests for payment of the balance owed under the contract. It was not until after Mr. Levingston's death that he made written demand upon Mrs. Levingston for payment. Although it has not been mentioned by either of the parties, the Court is aware that technically Collins was stayed from taking any action regarding the indebtedness subsequent to May 12, 1986, the date of the bankruptcy filing. Of course, this is still almost one year subsequent to the receipt of the Levingston's last check. The filing of the bankruptcy also effectively tolled the running of any applicable statutes of limitations which had not expired prior to the bankruptcy case being filed. Although

this factor is somewhat bothersome to the Court, it does not preclude Collins from recovering a judgment in this proceeding.

The Court is, therefore, of the opinion that the issues raised by Mrs. Levingston are not well taken. Her objection to the proof of claim filed by Collins will be overruled. Collins is hereby awarded an unsecured claim, jointly and severally against the estates of Stanley Levingston and Sylvia Levingston, in the sum of $55,118.94, the balance due for the contract additions. Collins is also hereby awarded an unsecured claim exclusively against the estate of Sylvia Levingston in the sum of $11,579.00, the unpaid balance of the original written contract. ($11,588.00 less $9.00) No prejudgment interest shall be added to these claims since both are unsecured, and since no demand was made of either of the debtors prior to the filing of their bankruptcy case.

A judgment will be entered consistent with this opinion.